IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMPUS STORES OF MASS., INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. _____ |
| ) | RECEIPT # _____ |
| FOLLETT HIGHER EDUCATION ) | AMOUNT $ _____ |
| GROUP, INC., ) | SUMMONS ISSUED _____ |
| ) | LOCAL RULE 4.1 _____ |
| Defendant. ) | WAIVER FORM _____ |
| ) | MCF ISSUED _____ |
| | BY DPTY. CLK. _____ |
| | DATE _____ |

## NOTICE OF REMOVAL

TO THE HONORABLE JUDGES AND CLERK OF THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MASSACHUSETTS:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441 and 1446, defendant

Follett Higher Education Group, Inc. (hereinafter "Follett") hereby removes to this Court the

above-entitled action based on the following supporting grounds:

1.     On or about May 26, 2005, plaintiff Campus Stores of MA, Inc. ("Plaintiff")

commenced a civil action against Follett in the Business Litigation Session of the Suffolk County

Superior Court, Commonwealth of Massachusetts, entitled Campus Stores of MA, Inc. v. Follett

Higher Education Group, Inc., Civil Action No. BLS-2005-02120, seeking an unidentified

amount of damages, but which Follett believes will be sought in an amount in excess of $75,000,

for Follett's alleged breach of contract with Plaintiff and interference with Plaintiff's

advantageous business relations.

2.     Pursuant to 28 U.S.C. §1446(a), true and correct copies of all process, pleadings,

and orders served on Follett are attached as Exhibit A.

3.    This Court has original diversity jurisdiction over this action under 28 U.S.C. § 1332, in that:

(a)    the amount in controversy is believed to be in excess of $75,000, exclusive of interest and costs; and

(b)    Plaintiff and Defendant are citizens of different states. Plaintiff is a corporation organized and existing under the laws of the Commonwealth of Massachusetts and having a principal place of business at 645 County Street, Taunton, MA. Follett is an Illinois corporation organized and existing under the laws of the state of Illinois and having a principal place of business in River Grove, Illinois.

4.    Despite Plaintiff's failure to include any dollar amount of its alleged damages in order to avoid removal, this case meets the statutory requirement for removal of $75,000. In particular, according to the complaint, Plaintiff operates ten college campus book stores in Massachusetts and New Hampshire under contracts it has had with these colleges dating back at least twenty-five years. Plaintiff alleges that when it attempted to sell its business in 2003, Follett, a prospective purchaser, signed a confidentiality agreement and was provided with information as to Plaintiff's contracts, commission structure, and profit margins. According to Plaintiff, Follett breached a restrictive covenant in this confidentiality agreement, and used Plaintiff's confidential information to raid Plaintiff's customer base and interfere with its contracts with at least one of its host colleges. Should it prevail on the merits, Plaintiff will likely seek damages for, *inter alia*, the loss of one of its ten contracts with host colleges, a contract that Plaintiff is likely to estimate having a value in excess of $75,000. See Spielman v. Genzyme Corp., 251 F.3d 1, 5 (2001) (remand only appropriate if the Court is satisfied that the plaintiff would not be entitled to recover from defendant the jurisdictional minimum).

5.    Counsel for Follett accepted service of Plaintiff's Complaint on behalf of Follett on May 27, 2005. Having been filed within 30 days of the date of service, Follett's Notice of

Removal is timely under 28 U.S.C. § 1446(b).  Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354-55 (1999).

6.     Pursuant to 28 U.S.C. §1446(d), written notice of the filing of this Notice of Removal, together with a copy of the Notice of Removal, will be filed with the Clerk of the Suffolk County Superior Court, Commonwealth of Massachusetts.  All adverse parties will receive a copy of the notice filed with that court.

7.     Pursuant to Local Rule 81.1(a), Follett will request from the clerk of the Suffolk County Superior Court certified or attested copies of all records and proceedings in the state court, and certified or attested copies of all docket entries therein, including a copy of this Notice of Removal, and will file the same with this Court within thirty (30) days after the filing of this Notice of Removal.

WHEREFORE, Follett hereby removes the above-captioned action pending in the Suffolk Superior Court to this Court.

Respectfully submitted,

FOLLETT HIGHER EDUCATION GROUP, INC.

By its attorneys,

CERTIFICATION OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 5/27/05
_Susan Selwich_

_Susan Gelwick_

Mark A. Berthiaume, B.B.O. No. 041715
Susan W. Gelwick, B.B.O. No. 567115
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800

DATED:  May 27, 2005

3

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No _BLS_____

Campus Stores Of Mass, Inc. _____ , Plaintiff(s)

v.

Follett Higher Education Group, Inc. ____ , Defendant(s)

## SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:     Follett Higher Education Group, Inc.

You are hereby summoned and required to serve upon Bradley L. Croft, Ruberto, Israel & Weiner, P.C. _____

plaintiff's attorney, whose address is 100 N. Washington St. Boston, MA 02114 _____ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the_____26th_____ day of ___May_____, in the year of our Lord two thousand _05_____ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV P. 1 3rd Rev



RUBERTO, ISRAEL & WEINER, P.C.

ATTORNEYS AT LAW

100 North Washington Street
Boston, Massachusetts 02114
Telephone  617.742.4200
Facsimile  617.742.2355
www.riw.com

Bradley L. Croft
Ext.:   206
E-mail: bcroft@riw.com

May 26, 2005

**VIA HAND DELIVERY**
Civil Clerk's Office
Suffolk Superior Court
90 Devonshire Street
Boston, MA 02109

Re:   *Campus Stores of MA, Inc. v. Follett Higher Education Group*
      *Suffolk Superior Court*

Dear Sir or Madam:

Enclosed for filing please the following documents in connection with the above-reference matter:

1.   Verified Complaint and Jury Demand;

2.   Civil Action Cover Sheet

3.   Plaintiff's Motion for Preliminary Injunction;

4.   Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction;

5.   Plaintiff's Motion for Short Order of Notice; and

6.   Check in the amount of 275.00.

Kindly file and docket same in your usual manner.

Very truly yours,

Bradley L. Croft

Enclosures

cc:   Campus Stores of Massachusetts, Inc.
      Christopher P. Litterio, Esq.
      Mark Berthiaume, Esq. (with enclosures, by hand)

| CIVIL ACTION COVER SHEET | **B.L.S.** | Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S)  Campus Stores Of Mass, Inc. | DEFENDANT(S)  Follett Higher Education Group Inc. |
|---|---|

| ATTORNEY FIRM NAME, ADDRESS AND TELEPHONE  Christopher P. Litterio, Bradley L. Croft  Ruberto, Israel & Weiner, P.C.  100 North Washington St., Boston, MA 02114  617-742-4200  Board of Bar Overseers number. | ATTORNEY (if known)  Mark Berthiaume, Esq., Seyfarth Shaw LLP  World Trade Center East, Two Seaport Lane, Suite 300  Boston, Massachusetts 02210-2028 |
|---|---|

**Origin Code**

**Original Complaint**

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BD3 | Restrictive Covenants | * ( B ) | (X) Yes   ( ) No |

**The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.**

In connection with the potential purchase of Plaintiff's college bookstore business, Defendant Follett Higher Education Group, Inc. ("Follett") signed a Confidentiality and Nondisclosure Agreement (the "Agreement") in which it agreed:

° It would be receiving from Plaintiff Campus Stores of Mass., Inc. ("Campus Stores") Confidential Information such as customer lists, customer contract information including expiration dates, sales data, profitability analysis, marketing plans and staffing models.

° It would keep this information strictly confidential and would not use it "for any competitive purposes."

° It would not "contact, solicit or accept business from" Campus Stores' customers.

° That injunctive relief was appropriate to prevent any "breach of threatened breach of any provisions of this Agreement."

Follett has breached the Agreement by contacting and soliciting the business of Curry College, one of Campus Stores' customers. Campus Stores has demanded that Follett cease and desist its efforts to procure the Curry College contract, but Follett has failed to give any assurance it has done so.

**\*A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _Bradley L. Croft_                DATE: 5/26/2005

AOTC-6 mtc005-11/99
A O S C 1-2000

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT OF THE
TRIAL COURT
CIVIL ACTION NO. **BLS** - _____

CAMPUS STORES OF MASS., INC.,

Plaintiff,

v.

FOLLETT HIGHER EDUCATION
GROUP,

Defendants.

**VERIFIED COMPLAINT AND
JURY DEMAND**

## Introduction

This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, interference with advantageous business relations, and violation of G.L. Chapter 93A arising from Defendant's breach of a Confidentiality and Nondisclosure Agreement that it executed in connection with its prospective acquisition of Plaintiff's business. Plaintiff seeks damages as well as injunctive relief.

## Parties

1.      Plaintiff Campus Stores of Mass, Inc. ("Campus Stores") is a Massachusetts corporation with a principal place of business located at 645 County Street, Taunton, Bristol County, Massachusetts.

2.       Follett Higher Education Group, Inc. ("Follett") is an Illinois Corporation with a registered place of business in Massachusetts located at 101 Federal Street, Boston, Suffolk County, Massachusetts.

## General Allegations

3.       Campus Stores operates and manages retail stores for ten colleges in Massachusetts and New Hampshire.

4.       Upon information and belief, Defendant Follett is the largest college bookstore operator in the world, managing more than 700 nationwide campus bookstores and providing management systems, support services and textbooks to over 1,800 independently managed bookstores.

5.       In or about 2003, Campus Stores attempted to sell its business. As part of an organized sales process, Campus Stores provided prospective purchasers with access to certain confidential information concerning Campus Stores' business ("Confidential Information"). The Confidential Information included, but was not limited to, information regarding the identity of the host colleges with which Campus Stores had contracts, the financial terms of each relationship, the commission structure, staffing models, profit margins and the dates that each contract was to expire. This information is not generally known to the public and is protected by Campus Stores.

6.       Campus Stores was concerned that a prospective purchaser unfairly could use such information to its competitive advantage in future bidding contests. For example, a competitor could structure its bid so as to exceed the financial benefits that it knew the college had been receiving from Campus Stores. In order to eliminate this risk and to protect its existing and future relationships, Campus Stores required all prospective purchasers to sign a

Confidentiality Agreement as a strict condition precedent to permitting such access to its

Confidential Information.

       7.     On or about July 23, 2003, Defendant Follett entered into a Confidentiality and

Nondisclosure Agreement (the "Agreement") with Campus Stores, a copy of which is attached

hereto as <u>Exhibit A</u>.  The Agreement contains the following key provisions:

        3.     The parties agree that any Confidential Information received or acquired
by one party (the "Receiving Party") from the other party (the "Disclosing
Party") hereunder, shall be held in trust and confidence for the Disclosing
Party and Receiving Party shall not, without the prior written consent of
the Disclosing Party, disclose such Information to anyone, nor use such
Information for any purpose except in connection with the activities
contemplated by this Agreement.

      10.    [...]  Furthermore, the Receiving Party shall not use any Confidential
Information of the Disclosing Party for any competitive purposes.  **Follett-
HEG agrees not to contact, solicit or accept business from, either
directly or indirectly, Campus Stores' suppliers, customers or host
colleges through the close of the next round of contract bidding for
each such supplier, customer or host college.**  The restriction in the
immediately preceding sentence shall be applicable only with respect to
the first time each of such contracts come up for bid or renewal following
the date of this Agreement.

      11.    In the event of any breach or threatened breach of any provision of this
Agreement, the Disclosing Party shall be entitled to immediate temporary,
preliminary and/or permanent injunctive relief to prevent any such breach
or threatened breach, in addition to any other relief available at law or at
equity.

      12.    The Receiving Party indemnified and agrees to hold the Disclosing Party
harmless from and against any and all losses, damages, liabilities, costs
and expenses, including attorneys' fees, incurred by the Disclosing Party,
arising out of or relating to the breach by the Receiving Party of any of the
agreements contained herein.

(Emphasis added).

       8.     Based upon Follett's covenants as set forth in the Agreement, Campus Stores

provided Follett with a 41 page Confidential Offering Memorandum setting forth extensive

confidential information including financial data for each of Plaintiff's accounts, profit margins, staffing models, commission structures, operating expenses, and the dates each contract was to expire.

9.     In 2004, Campus Stores' contract with Nichols College expired. At or about that time, a representative from Follett sought permission to bid on the Nichols College account. Campus Stores declined to grant Follett this permission, and invoked the provisions of the Agreement as set forth above. Follett acknowledged the enforceability of the Agreement, and indicated that it would abide by its covenants not to solicit or accept business from Campus Stores' host colleges. Upon information and belief, Follett ceased its pursuit of the Nichols College account.

10.     For approximately 25 years, Campus Stores has had a contract with Curry College and has enjoyed an overall favorable relationship with the school. Campus Stores' current contract with Curry College was set to expire on May 31, 2005, a fact made known to Follett vis-à-vis the confidential disclosure detailed above. Until very recently, Curry College had never indicated that it did not intend to renew Campus Stores' contract. In fact, as recently as February 2005, Curry College sent Campus Stores a letter in which the college made clear that Campus Stores was part of its future plans beyond May 2005.

11.     In or about early May 2005, Campus Stores learned that Follett was in the process of soliciting or negotiating an agreement with Curry College, in direct violation of its covenants to Campus Stores pursuant the Confidentiality Agreement. By letter dated May 5, 2005, counsel for Campus Stores wrote to Thomas Christopher, the president of Follett, to demand that Follett immediately cease and desist from further negotiations with Curry College.

4

12.     Follett did not send a written response, and to date, has not denied that such negotiations were taking place.

13.     In fact, counsel for Follett proposed an arrangement whereby Follett would pay Campus Stores to release the restriction preventing Follett from negotiating with Curry College and to buy Campus Stores' inventory in its Curry College store for an amount in excess of inventory cost. Campus Stores rejected that offer, and indicated that it intended to continue its business with Curry.

14.     Immediately thereafter, in sharp contrast to Curry College's prior encouragement to submit a bid to renew the contract, Campus Stores received a letter dated May 18, 2005 from Curry College indicating for the first time that it was apparently dissatisfied with Campus Stores and that it intended to pursue a relationship with a "large national bookstore chain" instead of continuing on with Plaintiff. This letter was faxed to Campus Stores approximately two hours after its counsel had concluded a telephone conversation with Follett's counsel in which Curry's intentions regarding Campus Stores was discussed.

15.     Upon information and belief, Curry College's decision to send this letter at this time was precipitated and improperly influenced by Follett, and demonstrates Follett's unfair competition and misuse of Campus Store's Confidential Information.

## COUNT I
### (Breach of Contract)

16.     Campus Stores repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs one through 15 above.

17.     There existed a contract between Campus Stores and Follett.

18.     By and through its actions, as above-described, Follett has breached that contract.

19.    As a direct and proximate result of said breach, Campus Stores has sustained

damages.

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

20.    Campus Stores repeats, realleges and incorporates by reference herein the

allegations set forth in paragraphs one through 19 above.

21.    By and through its actions, Follett has breached the implied covenant of good

faith and fair dealing in its contract with Campus Stores.

25.    Follett's actions have injured Campus Stores' right to receive the fruits of the

contract.

26.    As a direct result of such breach, Campus Stores has been damaged.

## COUNT III
### (Interference With Advantageous Relations)

27.    Campus Stores repeats, realleges and incorporates by reference herein the

allegations set forth in paragraphs one through 26 above.

28.    Campus Stores contemplated an advantageous business relationship of economic

benefit with Curry College.

29.    Follett knew of the contemplated advantageous business relationship and, with

improper motive and through improper means, intentionally and maliciously interfered with this

relationship.

30.    Campus Stores lost the advantage of said relationship as a direct result of Follett's

conduct.

**COUNT IV**
**(Violation of G.L., Chapter 93A, §§ 2 and 11)**

31.    Campus Stores repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs one through 30 above.

32.    At all relevant times, Campus Stores and Follett were engaged in the conduct of trade or commerce.

33.    Follett's conduct occurred substantially and primarily within Massachusetts.

34.    Follett's conduct, as above-described, including without limitation, intentionally using Campus Stores' confidential business information in order to attempt to take business away from Campus Stores and to gain an unfair competitive advantage over Campus Stores, constitutes unfair and deceptive acts and practices within the meaning of G.L. chapter 93A, §§ 2 and 11.

35.    As a direct and proximate result of Follett's conduct, Campus Stores has suffered money damages.

**COUNT V**
**(Injunctive Relief)**

36.    Campus Stores repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs one through 35 above.

37.    Plaintiff is entitled to a Permanent Injunction, enjoining Defendant Follett from contacting, soliciting or accepting business from, either directly or indirectly, Campus Stores' suppliers, customers or host colleges through the close of the next round of contract bidding for each such supplier, customer or host college.

WHEREFORE, Plaintiff Campus Stores of Mass., Inc., hereby prays that this Court allow and enter the following relief:

(1)     Enter a Preliminary Injunction, and then a Permanent Injunction, enjoining

         Defendant Follett from contacting, soliciting or accepting business from,

         either directly or indirectly, Campus Stores' suppliers, customers or host

         colleges, including without limitation Curry College, through the close of the

         next round of contract bidding for each such supplier, customer or host

         college;

(2)     Enter judgment in favor of Plaintiff and against Defendant on all counts in this

         Verified Complaint, plus interest, costs, attorneys' fees and multiple damages;

         and

(3)     Enter such other relief as this Court deems just, equitable and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims so triable.

                                        PLAINTIFF

                                        CAMPUS STORES OF MASS., INC.

                                        By its attorneys,

                                        Christopher P. Litterio, BBO #551098
                                        Bradley L. Croft, BBO #633347
                                        **RUBERTO, ISRAEL & WEINER, P.C.**
                                        100 North Washington Street
                                        Boston, MA  02114
                                        (617) 742-4200

Dated: May 26, 2005

8

### ***VERIFICATION***

I, Eric A. Cressman, on oath depose and say that I have read the foregoing Verified Complaint and swear that the factual allegations contained therein are true and accurate to the best of my knowledge, except where stated on information and belief, and there I believe them to be true. I further attest that I am duly authorized to act in this capacity on behalf of Campus Stores of Mass., Inc.

Eric A. Cressman, President
Campus Stores of Mass., Inc.
Duly Authorized

# CONFIDENTIALITY & NONDISCLOSURE AGREEMENT

AGREEMENT made as of this 23rd day of ___July___, 2003, by and between Campus Stores of Mass., Inc., a company having a place of business at 645 County Street, Taunton, Massachusetts 02780 (hereinafter "Campus Stores") and Follett Corporation Higher Education Group, of 1818 Swift Drive, Oak Brook, Illinois 60523 (hereinafter "Follett-HEG").

In consideration of the mutual promises contained herein and for other good and valuable consideration, the parties hereto agree as follows:

1.  Campus Stores and Follett-HEG both have as their purpose an interest in exploring a possible business relationship which may include a sale of Campus Stores' business. In order for the parties to explore this relationship, it may be necessary for each party to disclose certain of its Confidential Information.

2.  As used in this Agreement the term **"Confidential Information"** means all data or information not generally known outside of Campus Stores' or Follett-HEG's business, as the case may be, whether prepared or developed by a source outside the respective company or received by the respective company from any outside source.  Without limiting the scope of this definition, "Confidential Information" includes any customer files, sales reports, customer lists, sales invoices, concepts, ideas, trade secrets, and other methods and processes, formulas, data and know-how, discoveries, product development activities, developments, improvements, inventions, techniques, business or marketing plans, strategies, forecasts, new products, software packages and related documentation, unpublished financial statements and other financial information, budgets, projections, licenses, prices, costs, patent applications, customer and supplier lists, confidential reports and communications, contracts, and any other record, materials or information relating to the present or future business, products or prospects of either party which are not generally known to others engaged in similar business or activities.

3.  The parties agree that any Confidential Information received or acquired by one party (the **"Receiving Party"**) from the other party (the **"Disclosing Party"**) hereunder, shall be held in trust and confidence for the Disclosing Party and Receiving Party shall not, without the prior written consent of the Disclosing Party, disclose such Information to anyone, nor use such Information for any purpose except in connection with the activities contemplated by this Agreement.  The Receiving Party may disclose Confidential Information to his or her attorneys, accountants or other professional advisors, provided however that such advisor shall be bound by the terms hereof.

4.  All written or other tangible embodiments of the Confidential Information, including, without limitation, plans, drawings, operations, specifications, financial statements, projections, contracts, models, or data disclosed in writing (or other tangible form, including without limitation, software, firmware and magnetic media) by the Disclosing Party to the Receiving Party in connection with this Agreement shall remain the property of the Disclosing Party at all times and shall be returned or delivered to the Disclosing Party upon request of the Disclosing Party together with all copies made thereof.

5.     Each party shall have the right to refuse to accept any information under this Agreement, and nothing herein shall obligate either party to disclose to or receive from the other party, any particular information.

6.     No disclosure of Confidential Information hereunder shall be deemed to constitute or imply any license or right to use or practice the same except as expressly provided herein.

7.     Subject always to paragraph 3 above, however, the obligations of the Receiving Party with respect to the confidentiality and use of the Confidential Information of the Disclosing Party shall survive any termination of this Agreement and the cessation of the activities contemplated thereby for a period of five (5) years after disclosure of the relevant Confidential Information.

8.     This Agreement shall not constitute an offer to sell the business of the Disclosing Party, or any portion thereof; the purpose of this Agreement being to allow the parties hereto the opportunity to determine if further negotiations concerning a sale of the business of the Disclosing Party, or portion thereof, should continue.

9.     Upon written request of the Disclosing Party, the Receiving Party shall immediately return to the Disclosing Party any and all Confidential Information and copies thereof subject to this Agreement.

10.     The Receiving Party agrees that for a period of two (2) years following the receipt of any Confidential Information from the Disclosing Party, it shall not hire any employee of the Disclosing Party, nor solicit or induce any employee of the Disclosing Party to terminate their employment with the Disclosing Party. Furthermore, the Receiving Party shall not use any Confidential Information of the Disclosing Party for any competitive purposes. Follett-HBG agrees not to contact, solicit or accept business from, either directly or indirectly, Campus Stores' suppliers, customers or host colleges through the close of the next round of contract bidding for each such supplier, customer or host college. The restriction in the immediately preceding sentence shall be applicable only with respect to the first time each of such contracts come up for bid or renewal following the date of this Agreement.

11.     In the event of any breach or threatened breach of any provision of this Agreement, the Disclosing Party shall be entitled to immediate temporary, preliminary and/or permanent injunctive relief to prevent any such breach or threatened breach, in addition to any other relief available at law or at equity.

12.     The provisions of this Agreement shall be deemed severable, and invalidity or unenforceability of any one or more of the provisions hereof, shall not affect the validity and enforceability of the other provisions hereof.

13.     The Receiving Party indemnifies and agrees to hold the Disclosing Party harmless from and against any and all losses, damages, liabilities, costs and expenses, including attorneys'

2

fees, incurred by the Disclosing Party, arising out of or relating to the breach by the Receiving Party of any of the agreements contained herein.

14.     This Agreement supersedes all prior agreements, understandings, representations and statements, whether oral or written, between the parties relating to the subject matter of this Agreement. The terms of this Agreement may not be changed except by subsequent written agreement duly executed by each of the parties.

15.     Any notice given under this Agreement shall be in writing and delivered by first class mail, facsimile or telex to the parties at the address set forth above, unless changed by written notice.

16.     This Agreement shall be governed by and interpreted in accordance with the laws of The Commonwealth of Massachusetts. The parties hereby agree to submit to the exclusive jurisdiction of the courts of The Commonwealth of Massachusetts, and as necessary, the Federal courts of the United States of America located in such state, in respect of the interpretation and enforcement of all matters relating to this Agreement, and hereby waive and agree not to assert, as a defense in any action, suit or proceeding for the interpretation or enforcement of this Agreement, that such respective party is not subject thereto or that such action, suit or proceeding may not be brought or is not maintainable in said court or that this Agreement may not be enforced in or by said courts.

IN WITNESS WHEREOF the parties hereto have executed this Agreement under seal the day and year first written above.

CAMPUS STORES OF MASS, INC.

By: _Eric A. Cressman_____
Name: _ERIC A. CRESSMAN_____
Title: _PRESIDENT_____


FOLLETT HIGHER EDUCATION GROUP

By: _____
Name: _Scott Deaton_____
Title: Executive Vice President, Marketing

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. **BLS** _____

CAMPUS STORES OF MASS., INC.,

                Plaintiff,

v.

FOLLETT HIGHER EDUCATION GROUP,
INC.

                Defendant.

**PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

Pursuant to Mass.R.Civ.P. 65(b), Plaintiff Campus Stores of Mass., Inc. ("Campus Stores") hereby moves for a preliminary injunction to enforce the restrictive covenants contained in a Confidentiality and Nondisclosure Agreement (the "Agreement") signed by Defendant Follett Higher Education Group, Inc. ("Follett") in connection with its potential acquisition of Campus Stores in 2003. Specifically, Plaintiff seeks to enjoin Follett from contacting, soliciting or accepting business from Campus Stores' customers, including, without limitation, Curry College.

As described more fully in Plaintiff's supporting memorandum of law and in the Verified Complaint, filed herewith, Campus Stores is entitled to preliminary injunctive relief to enforce the restrictive covenants in the Agreement because it can demonstrate: (1) a likelihood of success on the merits of its claim that Follett breached, or is threatening to breach, the Agreement; (2) a substantial risk that Campus Stores will suffer irreparable harm in the absence of the requested injunction; and (3) that the gravity of the risk of harm to Campus Stores, considered in the light

of its chances of success, outweighs the risk of harm to Follett. Specifically, Follett has breached the Agreement by contacting and soliciting the business of Curry College, one of Campus Stores' customers. If Follett is permitted to contact and solicit Campus Stores' customers, it would be able to obtain an unfair competitive advantage based on its knowledge of Campus Stores' Confidential Information, including its pricing, commission structure, contract terms, and staffing models. As such, the bidding process for the renewal of Campus Stores existing accounts would unfairly favor Follett, thus resulting in irreparable harm to Campus Stores.

Although Campus Stores has demanded that Follett cease and desist its efforts to procure the Curry College contract, Follett has failed to give any assurances it has done so. Given Follett's calculated efforts to raid Campus Stores' customer base and its conscious disregard of its clear contractual obligations, an injunction is necessary to prevent Campus Stores from suffering the irreparable harm that would result if Follett is permitted to benefit from its violation of the Agreement.

WHEREFORE, Campus Stores respectfully requests that the Court grant its Motion for Preliminary Injunction and enter in the Order in the form attached thereto as Exhibit A.

Respectfully Submitted,

CAMPUS STORES OF MASS., INC.

By its attorneys,

Christopher P. Litterio, BBO #551098
Bradley L. Croft, BBO #633347
RUBERTO, ISRAEL & WEINER, P.C.
100 North Washington Street
Boston, MA 02114
(617) 742-4200

Dated: May 26, 2005

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail by hand on

May 26, 2005

- 2 -

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.

---

CAMPUS STORES OF MASS., INC.,

                    Plaintiff,

v.

FOLLETT HIGHER EDUCATION GROUP,
INC.

                    Defendant.

**ORDER – PRELIMINARY INJUNCTION**

---

Until further order of this Court, it is hereby <u>ORDERED</u> and <u>ADJUDGED</u> that

Defendant Follett Higher Education Group, Inc. is enjoined, prohibited and restrained

from the following:

(1)    Disclosing or using any Confidential Information that it received from

        Plaintiff without Plaintiff's prior written consent; and

(2)    Contacting, soliciting or accepting business from, either directly or

        indirectly, Campus Stores' suppliers, customers or host colleges, including

        without limitation Curry College, through the close of the next round of

        contract bidding for each such supplier, customer or host college.


**ENTERED AS AN ORDER OF THIS COURT THIS _____ DAY OF MAY, 2005.**

_____

(_____, J.), Justice of the Superior Court

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.

CAMPUS STORES OF MASS., INC.,

Plaintiff,

v.

FOLLETT HIGHER EDUCATION GROUP,
INC.

Defendant.

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

## INTRODUCTION

In connection with the potential purchase of Plaintiff's college bookstore business,
Defendant Follett Higher Education Group, Inc. ("Follett") signed a Confidentiality and
Nondisclosure Agreement (the "Agreement") in which it agreed:

- It would be receiving from Plaintiff Campus Stores of Mass., Inc. ("Campus
  Stores") Confidential Information such as customer lists, customer contract
  information including expiration dates, sales data, profitability analysis,
  marketing plans and staffing models.

- It would keep this information strictly confidential and would not use it "for any
  competitive purposes."

- It would not "contact, solicit or accept business from" Campus Stores' customers.

- That injunctive relief was appropriate to prevent any "breach or threatened breach
  of any provisions of this Agreement."

Follett has breached the Agreement by contacting and soliciting the business of Curry College, one of Campus Stores' customers. Campus Stores has demanded that Follett cease and desist its efforts to procure the Curry College contract, but Follett has failed to give any assurances it has done so.

Given Follett's calculated efforts to raid Campus Stores' customer base and its conscious disregard of its clear contractual obligations, Campus Stores is forced to come to this Court to obtain an injunction preventing Follett from contacting, soliciting or accepting business from Campus Stores' customers including, but not limited to, Curry College.

## FACTS

**A.     Campus Stores and Follett Enter Into Discussions Regarding Follett's Potential Acquisition of Campus Stores' Business.**

Campus Stores is a local company which operates bookstores on ten college campuses in Massachusetts and New Hampshire. (See Verified Complaint at ¶ 3.) Follett, on the other hand, is the largest operator of campus bookstores in the world, with stores on more than 700 campuses across the nation. (Ver. Cmplnt. at ¶ 4.)

In or about 2003, Campus Stores attempted to sell its business. (Ver. Cmplnt. at ¶ 5.) As part of an organized sales process, Campus Stores required prospective purchasers to sign a Confidentiality Agreement before they were given access to certain confidential information concerning Campus Stores' business ("Confidential Information"). (Ver. Cmplnt. at ¶ 5.) The Confidential Information included, but was not limited to, information regarding the identity of the host colleges with which Campus Stores had contracts, the financial terms of each relationship, the commission structure, staffing models, profit margins and the dates that each contract was to expire. (Ver. Cmplnt. at ¶ 5.) Campus Stores was concerned that a prospective purchaser unfairly could use such information to its competitive advantage in future bidding

- 2 -

contests. (Ver. Cmplnt. at ¶ 6.)  For example, a competitor could structure its bid so as to exceed

the financial benefits that it knew the college had been receiving from Campus Stores. (Ver.

Cmplnt. at ¶ 6.)  In order to eliminate this risk and to protect its existing and future relationships,

Campus Stores required all prospective purchasers to sign a Confidentiality Agreement in

consideration for access to its Confidential Information.  (Ver. Cmplnt. at ¶ 6.)

     **B.**     **Follett Enters Into Confidentiality Agreement.**

     On or about July 23, 2003, Defendant Follett entered into a Confidentiality and

Nondisclosure Agreement (the "Agreement") with Campus Stores, a copy of which is attached

hereto as <u>Exhibit A</u>. (Ver. Cmplnt. at ¶ 7.)  The Agreement contains the following key

provisions:

     3.     The parties agree that any Confidential Information received or acquired by one party (the "Receiving Party") from the other party (the "Disclosing Party") hereunder, shall be held in trust and confidence for the Disclosing Party and Receiving Party shall not, without the prior written consent of the Disclosing Party, disclose such Information to anyone, nor use such Information for any purpose except in connection with the activities contemplated by this Agreement.

     10.     […]  Furthermore, the Receiving Party shall not use any Confidential Information of the Disclosing Party for any competitive purposes. **Follett-HEG agrees not to contact, solicit or accept business from, either directly or indirectly, Campus Stores' suppliers, customers or host colleges through the close of the next round of contract bidding for each such supplier, customer or host college.** The restriction in the immediately preceding sentence shall be applicable only with respect to the first time each of such contracts come up for bid or renewal following the date of this Agreement.

     11.     In the event of any breach or threatened breach of any provision of this Agreement, the Disclosing Party shall be entitled to immediate temporary, preliminary and/or permanent injunctive relief to prevent any such breach or threatened breach, in addition to any other relief available at law or at equity.

     12.     The Receiving Party indemnifies and agrees to hold the Disclosing Party harmless from and against any and all losses, damages, liabilities, costs

and expenses, including attorneys' fees, incurred by the Disclosing Party, arising out of or relating to the breach by the Receiving Party of any of the agreements contained herein.

(Emphasis added). (Ver. Cmplnt. at ¶ 7.) Based upon Follett's covenants as set forth in the Agreement, Campus Stores provided Follett with a 41 page Confidential Offering Memorandum setting forth extensive confidential information including financial data for each of Plaintiff's accounts, profit margins, staffing models, commission structures, operating expenses, and the dates each contract was to expire. (Ver. Cmplnt. at ¶ 8.)

**C.    Follett Contacts Campus Stores for Permission to Pursue Nichols College.**

In 2004, Campus Stores' contract with Nichols College expired. (Ver. Cmplnt. at ¶ 9.) At or about that time, a representative from Follett sought permission to bid on the Nichols College account. (Ver. Cmplnt. at ¶ 9.) Campus Stores declined to grant Follett this permission, and invoked the provisions of the Agreement as set forth above. (Ver. Cmplnt. at ¶ 9.) Follett acknowledged the enforceability of the Agreement, and indicated that it would abide by its covenants not to solicit or accept business from Campus Stores' host colleges. (Ver. Cmplnt. at ¶ 9.) Upon information and belief, Follett ceased its pursuit of the Nichols College account. (Ver. Cmplnt. at ¶ 9.)

**D.    Follett Breaches the Agreement by Negotiating with Curry College.**

For approximately 25 years, Campus Stores has had a contract with Curry College and has enjoyed an overall favorable relationship with the school. (Ver. Cmplnt. at ¶ 10.) Campus Stores' current contract with Curry College was set to expire on May 31, 2005, a fact made known to Follett vis-à-vis the confidential disclosure detailed above. (Ver. Cmplnt. at ¶ 10.) Until very recently, Curry College had never indicated that it did not intend to renew Campus Stores' contract. (Ver. Cmplnt. at ¶ 10.) In fact, as recently as February 2005, Campus Stores

- 4 -

received a letter from Curry College in which the college made clear that Campus Stores was part of its future plans beyond May 2005. (Ver. Cmplnt. at ¶ 10.) Then, in or about early May 2005, Campus Stores learned that Follett was in the process of soliciting or negotiating an agreement with Curry College, in direct violation of its covenants to Campus Stores pursuant to the Confidentiality Agreement. (Ver. Cmplnt. at ¶ 11.) By letter dated May 5, 2005, counsel for Campus Stores wrote to Thomas Christopher, the president of Follett, to demand that Follett immediately cease and desist from further negotiations with Curry College. (Ver. Cmplnt. at ¶ 11.)

Follett did not send a written response, and to date, has not denied that such negotiations were taking place. (Ver. Cmplnt. at ¶ 12.) In fact, counsel for Follett proposed an arrangement whereby Follett would pay Campus Stores to release the restriction preventing Follett from negotiating with Curry College and to buy Campus Stores' inventory in its Curry College store for an amount in excess of inventory cost. (Ver. Cmplnt. at ¶ 13.) Campus Stores rejected that offer, and indicated that it intended to continue its business with Curry. (Ver. Cmplnt. at ¶ 13.)

Immediately thereafter, in sharp contrast to Curry College's prior encouragement to submit a bid to renew the contract, Campus Stores received a letter dated May 18, 2005 from Curry College indicating for the first time that it was apparently dissatisfied with Campus Stores and that it intended to pursue a relationship with a "large national bookstore chain" *i.e.*, Follett, instead of continuing on with Plaintiff. (Ver. Cmplnt. at ¶ 14.) This letter was faxed to Campus Stores approximately two hours after its counsel had concluded a telephone conversation with Follett's counsel in which Curry's intentions regarding Campus Stores was discussed. (Ver. Cmplnt. at ¶ 14.) Upon information and belief, Curry College's decision to send this letter at this

time was precipitated by, or, at a minimum, improperly influenced by Follett's involvement.
(Ver. Cmplnt. at ¶ 15.)

### ARGUMENT

Massachusetts courts will enforce a restrictive covenant with regard to the sale of a business as long as it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest. *See Marine Contrs. Co. v. Hurley*, 365 Mass. 280, 287-288, 289, (1974); *All Stainless, Inc. v. Colby*, 364 Mass. 773, 778 (1974). Legitimate business interests include protection of trade secrets, confidential information, and good will. *Marine Contrs. Co. v. Hurley*, 365 Mass. at 287. Courts look "less critically" at restrictive covenants arising from the sale of a business because, unlike employers and employees, buyers and sellers are likely to be similarly-situated, with equal bargaining power and often times the benefit of counsel. *Boulanger v. Dunkin' Donuts Inc.*, 442 Mass 635, 640 (2004). Courts consider whether "the parties entered into the agreement with the assistance of counsel and without compulsion." *Wells v. Wells*, 9 Mass.App.Ct. 321, 323-325 (1980).

Campus Stores is entitled to preliminary injunctive relief to enforce the restrictive covenants in the Agreement because it can demonstrate: (1) a likelihood of success on the merits of its claim that Follett breached, or is threatening to breach, the Agreement; (2) a substantial risk that Campus Stores will suffer irreparable harm in the absence of the requested injunction; and (3) that the gravity of the risk of harm to Campus Stores, considered in the light of its chances of success, outweighs the risk of harm to Follett. *See GTE Products Corp. v. Stewart*, 414 Mass. 721, 722-23 (1993); *Packaging Indus. Group, Inc. v. Cheney*, 380 Mass. 609, 617 (1980). Moreover, enforcement of the Agreement through an injunction is necessary in order to protect Plaintiff's legitimate business interests – specifically its Confidential Information and its goodwill.

- 6 -

I.    **CAMPUS STORES IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS AGAINST FOLLETT.**

A.    **Follett Knowingly and Intentionally Breached the Agreement**

Campus Stores anticipated the serious risks that could result from providing competitors with access to its Confidential Information and thus it took steps to avoid such risks by requiring interested parties such as Follett to enter into the Confidentiality Agreement. By its express, unambiguous terms, the Agreement provides that (1) Plaintiff's customers and contract information constitute Confidential Information; and (2) that the Receiving Party would not "contact, solicit or accept" business from Plaintiff's customers for a defined period. In doing so, potential purchasers would obtain a fully informed view into Campus Stores' operations to assess the value of its business, and Campus Stores would have the peace of mind that the potential purchasers would not later misuse the information to gain an unfair competitive edge over Campus Stores. By stipulating that these restrictions would apply only to Campus Stores existing contracts, and would remain in place only with respect to the first time each of those contracts came up for bid or renewal, the parties narrowly tailored the agreement so as to avoid any unreasonable restraint on trade.

Follett's conduct with respect to the Nichols College account demonstrates that Follett is well aware of the restrictions in the Agreement. Only a year ago, Follett contacted Campus Stores to ask permission to contact and solicit the Nichols College account. In doing so, Follett expressly acknowledged the existence and enforceability of the restrictions imposed by the Agreement. Further, given that Campus Stores refused to permit Follett from pursuing that account, Follett was put on notice that Campus Stores intended to enforce the protections afforded by the Agreement.

- 7 -

Presently, Follett has elected not to seek Campus Stores' permission to pursue another of

its accounts, Curry College, likely knowing that Campus Stores would again object to such

pursuit. In doing so, Follett has breached the Agreement. This is the exact type of predatory

conduct which prompted Campus Stores to require potential purchasers to sign the

Confidentiality Agreement. There can be no dispute that Follett has been in contact with Curry

College for the purpose of soliciting its business, and therefore that Follett has breached the

Agreement. There is also no doubt that, if awarded the contract by Curry, Follett will accept

Curry's business. When accused by Campus Stores of such involvement, not only did Follett fail

to deny its involvement, it actually offered to purchase Campus Stores' inventory at a price in

excess of the inventory's value, likely in anticipation of replacing Campus Stores as the

bookstore operator at that college. As such, Campus Stores has demonstrated a reasonable

likelihood of succeeding on the merits of its breach of contract claim against Campus Stores.

## II.   CAMPUS STORES WILL SUFFER IRREPARABLE HARM IF THE COURT DOES NOT ISSUE THE REQUESTED INJUNCTIVE RELIEF.

The goal of a preliminary injunction is to minimize the risk of irreparable harm to the

moving party. *Packaging Industries,* 380 Mass. at 617, n. 12. In the absence of an injunction,

Campus Stores will suffer irreparable harm because it may well lose all of its business to

Follett's predatory tactics. As stated above, Campus Stores only has contracts concerning ten

stores. Each contract is therefore vital to Plaintiff's continued existence. An injunction is

critical to preserving Campus Stores' remaining goodwill and business and to prevent Follett

from benefiting from the fruits of its contractual violations. Here, the parties recognized the

importance of the information and agreed that injunctive relief was the appropriate remedy to

protect that information. Where two commercially sophisticated parties knowingly agree to the

- 8 -

entry of injunctive relief to protect confidential information, the Court should hold them to their

agreement and enter an injunction.

### III.    THE RISK OF IRREPARABLE HARM TO CAMPUS STORES ABSENT THE REQUESTED INJUNCTION FAR OUTWEIGHS THE MINIMAL RESTRICTIONS THE INJUNCTION WOULD IMPOSE ON FOLLETT.

As described above, Campus Stores has established that it is reasonably likely to succeed

on the merits of its claims against Follett. Moreover, Campus Stores has suffered and will

continue to suffer irreparable harm absent injunctive relief. These factors weigh heavily in favor

of granting Campus Stores the requested injunctive relief.

By contrast, an injunction would have minimal, if any, impact on Follett's business.

Even if an injunction issues, Follett still would be free to pursue any of the hundreds of

thousands of other colleges and universities nationwide. Rather, it would be prevented only from

soliciting or doing business with these few colleges, and then, only until the first time each of

Plaintiff's contracts come up for bid or renewal following the date of the Agreement. As such,

the injunction would not prevent Follett from competing in the marketplace, as Follett would

remain perfectly free, even in the same geographic area, to pursue any accounts other than the

few at issue here.

Under these circumstances, the irreparable harm that Campus Stores would suffer absent

the requested injunction far outweighs the minimal restrictions on Follett's business

opportunities. As such, this Court should issue the requested injunction.

## CONCLUSION

For the reasons stated above, Campus Stores respectfully requests that the Court grant its

Motion for Preliminary Injunction and enter in the Order in the form attached thereto as

Exhibit A.

Respectfully Submitted,

CAMPUS STORES OF MASS., INC.

By its attorneys,

Christopher P. Litterio, BBO #551098
Bradley L. Croft, BBO #633347
RUBERTO, ISRAEL & WEINER, P.C.
100 North Washington Street
Boston, MA  02114
(617) 742-4200

Dated: May 26, 2005

I hereby certify that a true copy of the above
document was served upon the attorney of
record for each other party by mail by hand on

May 26, 2005

- 10 -

## CONFIDENTIALITY & NONDISCLOSURE AGREEMENT

AGREEMENT made as of this 23rd day of ___July___, 2003, by and between Campus Stores of Mass., Inc., a company having a place of business at 645 County Street, Taunton, Massachusetts 02780 (hereinafter "Campus Stores") and Follett Corporation Higher Education Group, of 1818 Swift Drive, Oak Brook, Illinois 60523 (hereinafter "Follett-HEG").

In consideration of the mutual promises contained herein and for other good and valuable consideration, the parties hereto agree as follows:

1.     Campus Stores and Follett-HEG both have as their purpose an interest in exploring a possible business relationship which may include a sale of Campus Stores' business. In order for the parties to explore this relationship, it may be necessary for each party to disclose certain of its Confidential Information.

2.     As used in this Agreement the term "**Confidential Information**" means all data or information not generally known outside of Campus Stores' or Follett-HEG's business, as the case may be, whether prepared or developed by a source outside the respective company or received by the respective company from any outside source. Without limiting the scope of this definition, "Confidential Information" includes any customer files, sales reports, customer lists, sales invoices, concepts, ideas, trade secrets, and other methods and processes, formulae, data and know-how, discoveries, product development activities, developments, improvements, inventions, techniques, business or marketing plans, strategies, forecasts, new products, software packages and related documentation, unpublished financial statements and other financial information, budgets, projections, licenses, prices, costs, patent applications, customer and supplier lists, confidential reports and communications, contracts, and any other record, materials or information relating to the present or future business, products or prospects of either party which are not generally known to others engaged in similar business or activities.

3.     The parties agree that any Confidential Information received or acquired by one party (the "**Receiving Party**") from the other party (the "**Disclosing Party**") hereunder, shall be held in trust and confidence for the Disclosing Party and Receiving Party shall not, without the prior written consent of the Disclosing Party, disclose such Information to anyone, nor use such Information for any purpose except in connection with the activities contemplated by this Agreement. The Receiving Party may disclose Confidential Information to his or her attorneys, accountants or other professional advisors, provided however that such advisor shall be bound by the terms hereof.

4.     All written or other tangible embodiments of the Confidential Information, including, without limitation, plans, drawings, operations, specifications, financial statements, projections, contracts, models, or data disclosed in writing (or other tangible form, including without limitation, software, firmware and magnetic media) by the Disclosing Party to the Receiving Party in connection with this Agreement shall remain the property of the Disclosing Party at all times and shall be returned or delivered to the Disclosing Party upon request of the Disclosing Party together with all copies made thereof.

5.      Each party shall have the right to refuse to accept any information under this Agreement, and nothing herein shall obligate either party to disclose to or receive from the other party, any particular information.

6.      No disclosure of Confidential Information hereunder shall be deemed to constitute or imply any license or right to use or practice the same except as expressly provided herein.

7.      Subject always to paragraph 3 above, however, the obligations of the Receiving Party with respect to the confidentiality and use of the Confidential Information of the Disclosing Party shall survive any termination of this Agreement and the cessation of the activities contemplated thereby for a period of five (5) years after disclosure of the relevant Confidential Information.

8.      This Agreement shall not constitute an offer to sell the business of the Disclosing Party, or any portion thereof; the purpose of this Agreement being to allow the parties hereto the opportunity to determine if further negotiations concerning a sale of the business of the Disclosing Party, or portion thereof, should continue.

9.      Upon written request of the Disclosing Party, the Receiving Party shall immediately return to the Disclosing Party any and all Confidential Information and copies thereof subject to this Agreement.

10.     The Receiving Party agrees that for a period of two (2) years following the receipt of any Confidential Information from the Disclosing Party, it shall not hire any employee of the Disclosing Party, nor solicit or induce any employee of the Disclosing Party to terminate their employment with the Disclosing Party. Furthermore, the Receiving Party shall not use any Confidential Information of the Disclosing Party for any competitive purposes. Follett-HEG agrees not to contact, solicit or accept business from, either directly or indirectly, Campus Stores' suppliers, customers or host colleges through the close of the next round of contract bidding for each such supplier, customer or host college. The restriction in the immediately preceding sentence shall be applicable only with respect to the first time each of such contracts come up for bid or renewal following the date of this Agreement.

11.     In the event of any breach or threatened breach of any provision of this Agreement, the Disclosing Party shall be entitled to immediate temporary, preliminary and/or permanent injunctive relief to prevent any such breach or threatened breach, in addition to any other relief available at law or at equity.

12.     The provisions of this Agreement shall be deemed severable, and invalidity or unenforceability of any one or more of the provisions hereof, shall not affect the validity and enforceability of the other provisions hereof.

13.     The Receiving Party indemnifies and agrees to hold the Disclosing Party harmless from and against any and all losses, damages, liabilities, costs and expenses, including attorneys'

_2_

fees, incurred by the Disclosing Party, arising out of or relating to the breach by the Receiving Party of any of the agreements contained herein.

14.    This Agreement supersedes all prior agreements, understandings, representations and statements, whether oral or written, between the parties relating to the subject matter of this Agreement. The terms of this Agreement may not be changed except by subsequent written agreement duly executed by each of the parties.

15.    Any notice given under this Agreement shall be in writing and delivered by first class mail, facsimile or telex to the parties at the address set forth above, unless changed by written notice.

16.    This Agreement shall be governed by and interpreted in accordance with the laws of The Commonwealth of Massachusetts. The parties hereby agree to submit to the exclusive jurisdiction of the courts of The Commonwealth of Massachusetts, and as necessary, the Federal courts of the United States of America located in such state, in respect of the interpretation and enforcement of all matters relating to this Agreement, and hereby waive and agree not to assert, as a defense in any action, suit or proceeding for the interpretation or enforcement of this Agreement, that such respective party is not subject thereto or that such action, suit or proceeding may not be brought or is not maintainable in said court or that this Agreement may not be enforced in or by said courts.

IN WITNESS WHEREOF the parties hereto have executed this Agreement under seal the day and year first written above.

CAMPUS STORES OF MASS, INC.

By: _Eric A. Cressman_____
Name: _ERIC A. CRESSMAN_____
Title: _PRESIDENT_____

FOLLETT HIGHER EDUCATION GROUP

By: _____
Name: _Scott Deaton_____
Title: _Executive Vice President, Marketing_

U:\Docs\Campus Stores\Confidentiality Agreement- 6-30 - Clean.doc

_3_

OJS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Campus Stores of Mass., Inc. | Follett Higher Education Group, Inc. |

| (b) County of Residence of First Listed Plaintiff Bristol (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
|---|---|
| (c) Attorney's (Firm Name, Address, and Telephone Number) Christopher P. Litterio, Bradley L. Croft, Ruberto, Israel & Weiner, P.C., 100 North Washington Street, Boston, MA 02114, Tel. (617) 742-4200 | Attorneys (If Known) Mark A. Berthiaume, Esq., Susan W. Gelwick, Esq., Seyfarth Shaw, LLP, World Trade Center East, Two Seaport Lane, Suite 300, Boston, MA 02210-2028, Tel. (617) 946-4990 |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers' Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | **PERSONAL INJURY** ☐ 362 Personal Injury — Med. Malpractice ☐ 365 Personal Injury — Product Liability ☐ 368 Asbestos Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | ☐ 650 Airline Regs. | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | | ☐ 660 Occupational Safety/Health | | ☐ 480 Consumer Credit |
| | **PERSONAL PROPERTY** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** ☐ 510 Motions to Vacate Sentence **Habeas Corpus:** ☐ 530 General ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | | ☐ 740 Railway Labor Act | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other ☐ 440 Other Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C § 1332.

Brief description of cause:
Plaintiff seeks damages and injunctive relief for Defendant's alleged breach of contract and use of Plaintiff's confidential customer information to solicit Plaintiff's customers and interfere with its contracts.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE
May 27, 2005

SIGNATURE OF ATTORNEY OF RECORD
*Susan Gelwick*

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

© LegalNet, Inc.    www.USCourtForms.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)____Campus Stores of Mass., Inc. v. Follett Higher Education
    Group, Inc.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local
    rule 40.1(a)(1)).

    [ ]    I.      160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

    [ ]    II.     195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
                   740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

    [✓]    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                   315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                   380, 385, 450, 891.

    [ ]    IV.     220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
                   690, 810, 861-865, 870, 871, 875, 900.

    [ ]    V.      150, 152, 153.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this
    district please indicate the title and number of the first filed case in this court.

    _____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                      YES  [ ]      NO  [✓]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
    §2403)
                                                      YES  [ ]      NO  [✓]
    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                      YES  [ ]      NO  [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                      YES  [ ]      NO  [✓]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).
                                                      YES  [ ]      NO  [ ]

          A.    If yes, in which division do all of the non-governmental parties reside?

                Eastern Division  [ ]          Central Division  [ ]          Western Division  [ ]

          B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
                residing in Massachusetts reside?

                Eastern Division  [✓]          Central Division  [ ]          Western Division  [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes,
    submit a separate sheet identifying the motions)
                                                      YES  [✓]      NO  [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    Mark A. Berthiaume, Esq., Susan W. Gelwick, Esq.
ADDRESS    Seyfarth Shaw LLP, World Trade Center East, Two Seaport Lane, Suite 300, Boston, MA 02210
TELEPHONE NO.  (617) 946-4990

(CategoryForm.wpd - 5/2/05)