UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMPUS STORES OF MASS., INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FOLLETT HIGHER EDUCATION )<br>GROUP, INC., )<br>)<br>Defendant. )<br>) | C.A. No. 05-11116 NG |

## AFFIDAVIT OF KENNETH K. QUIGLEY, JR.

I, Kenneth K. Quigley, Jr., under oath hereby state as follows:

1. I am the President of Curry College ("Curry"), a 125 year old private liberal arts institution located in Milton, Massachusetts. I have served in this capacity since February 16, 1996. As President of Curry, it has been and continues to be my responsibility to make decisions concerning the college's business operations, including the operation of its bookstore.

2. I am submitting this affidavit in support of Follett Higher Education Group, Inc.'s ("Follett") opposition to Campus Stores of Massachusetts, Inc.'s ("Campus Stores") request for an injunction to prevent Follett from taking over the operations of Curry's bookstore on or after June 1, 2005. The facts contained herein are based upon my personal knowledge.

3. As of September 2002, Curry's bookstore was operated by an independent operator, Campus Stores, pursuant to an agreement that originally had been executed on July 28, 1989, and subsequently renewed on several occasions.

4. By September 2002, I had become unhappy with the operation of the bookstore by Campus Stores. In particular, I was dissatisfied with the level and quality of the service provided by Campus Stores, the high rate of turnover of staff and management at the store, and its overall performance as operator of the bookstore. As a result, I made the decision to terminate the Campus Stores agreement on its expiration date, which I believed was May 31, 2003, and transition the operations to one of the much larger national college bookstore operators. I believed then, and continue to believe today, that a larger national operator would be better able to provide the technology, training, and resources necessary to serve the needs of the college, its students and its faculty.

5. As a result, in September 2002, I authorized Curry's Chief Financial Officer, Richard Sullivan, to notify Campus Stores that Curry intended to terminate its contract. By letter dated September 17, 2002, from Richard Sullivan to Eric Cressman, president of Campus Stores, Curry formally notified Campus Stores of the termination of its agreement with Curry effective May 31, 2003. A true and accurate copy of the September 17, 2002 letter from Sullivan to Cressman is attached hereto as Exhibit A.

6. By letter dated September 25, 2002, Campus Stores responded that based upon its interpretation of the agreement between Curry and Campus Stores, the contract was only scheduled to expire on May 31, 2005, not May 31, 2003. Campus Stores confirmed, however, that it regarded Curry's September 17, 2002, letter to be a formal notice of termination effective May 31, 2005. A true and accurate copy of the September 25, 2002 letter from Campus Stores to Curry is attached hereto as Exhibit B.

7. Rather than challenge Campus Stores' interpretation of the agreement, I elected to allow Campus Stores to continue to operate Curry's bookstore through May 31, 2005, subject to the notice of termination issued on September 17, 2002.

8. At no time since I authorized the issuance of the termination letter on September 17, 2002, has my position changed with respect to the operation of the bookstore by Campus Stores. Since that time, I have had no intention of continuing a business relationship with Campus Stores beyond the May 31, 2005, contract expiration date.

9. In preparation for the transition of the bookstore to a new operator, I reached out to several national bookstore operators, including Follett Higher Education Group, Inc. ("Follett") and Barnes & Noble.

10. Specifically, by letter dated July 7, 2004, I first contacted Follett to explore the possibility of having Follett replace Campus Stores as the operator of Curry's bookstore. I reached out to Follett after having visited Follett's bookstore at Fairfield University in Fairfield, Connecticut, where I was very impressed by the condition and operation of the store. Prior to my letter of July 7, Follett had neither contacted Curry nor in any way solicited Curry's bookstore business.

11. In subsequent conversations with Follett representatives William Dowdy and Joseph Flanagan, I advised them that Curry had terminated the agreement with Campus Stores effective May 31, 2005 and that I had no intention of continuing Curry's relationship with Campus Stores beyond May 31, 2005, or even of entertaining proposals from Campus Stores for the continuation of such relationship. As I explained to Follett's representatives, it remained my firm intention to transition the bookstore operations to a national bookstore chain.

12. With the May 31, 2005 contract termination date approaching, on February 18, 2005, I informed Follett that Curry was still planning to transition its bookstore operations to a new operator and that I perceived Follett to be our likely partner in that effort. I subsequently solicited and, on or about March 31, 2005, received Follett's proposal for the management of the bookstore.

13. In or about early April 2005, and shortly after receiving Follett's proposal, I made the decision to award the contract to operate Curry's bookstore to Follett. My intention was to iron out certain issues and present Follett's proposal to Curry's Board of Trustees with a recommendation that they approve it.

14. In late April 2005, I received a letter, dated April 26, 2005, from Eric Cressman, the President of Campus Stores, making Curry an offer to continue operation of the bookstore after the termination date of May 31, 2005. The offer was not solicited by anyone at Curry and did not alter Curry's position regarding Campus Stores or intention, which continued to be to transition bookstore operations to a national operator, specifically Follett. In fact, I viewed the April 26 letter from Campus Stores as a last-ditch effort to save a contract that it knew had been lost long ago. Given Curry's longstanding position regarding Campus Stores, I did not even feel that it was necessary to respond to the letter.

15. Indeed, at no time after Curry terminated the Campus Stores contract on September 17, 2002, have I or any other representative of Curry solicited a proposal from Campus Stores for the operation of the Curry bookstore after May 31, 2005. Moreover, at no time after September 17, 2002, have I had any intention of continuing the relationship with Campus Stores beyond May 31, 2005. By letter dated May 18, 2005, I again confirmed to Campus Stores that Curry would not be going forward with Campus Stores as a bookstore provider beyond the expiration

of the contract on May 31, 2005. A true and accurate copy of the May 18, 2005 letter from me to Campus Stores is attached hereto as Exhibit C.

16. I understand that Campus Stores now contends that it received a letter from Curry in February 2005, which somehow led it to believe that they had a chance to be Curry's bookstore operator after May 31, 2005. I can only assume that Campus Stores is referring to a February 17, 2005 letter that I sent to Eric Cressman, a copy of which is attached as Exhibit D. The letter was not intended to suggest or infer in any way that Campus Stores had a future at Curry beyond May 31, 2005. The letter was only intended as a courtesy to alert them to a certain public announcement that I was about to make regarding Curry's future transition of the bookstore, first to a temporary location and then the soon-to-be-constructed new student center. I also wanted to advise Campus Stores of these plans because Curry may have had the need to contact it for information given that Campus Stores was the current operator.

17. Ultimately, if Campus Stores truly believed that it had any future with Curry, either as a result of the February 17, 2005 letter or otherwise, then it would not have waited until April 26, 2005, one month before the expiration of its contract, to attempt to engage in negotiations. In fact, Curry had made it abundantly clear to Campus Stores that it would not be considered as bookstore operator after May 31, 2005.

18. I understand that Campus Stores has now sought to prevent Follett from going forward to take over the operations of the Curry bookstore on or after June 1, 2005. I firmly believe that if Campus Stores is successful in preventing Follett from proceeding with its relationship with Curry, it will be the students, faculty and administration at Curry that will suffer. Regardless of the results of this proceeding, Curry does not intend to reverse the position

it has taken since 2002 and suddenly continue its relationship with Campus Stores beyond May 31, 2005.

Signed under the pains and penalties of perjury this 31st day of May, 2005.

/s/ Kenneth Quigley
Kenneth K. Quigley, Jr.

BO1 15718002.1



CURRY COLLEGE      MILTON, MASSACHUSETTS 02186      TELEPHONE (617) 333-0500
FAX (617) 333-0860

September 17, 2002

**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

Mr. Eric A. Cressman, President
Campus Stores of Mass. Inc.
County Crossing
645 County Street
Taunton, MA 02780

Dear Mr. Cressman:

As you know, the current agreement between the College and Campus Stores is quite outdated (having been drafted by Campus Stores back in 1989). The College believes it is good business for both the College and Campus Stores to enter into a new agreement, with updated terms mutually agreeable to both parties.

Therefore, this letter serves as formal written notification that Curry College intends to terminate its agreement with Campus Stores of Mass., Inc., effective on close of business May 31, 2003. Accordingly, Campus Stores of Mass., Inc. will no longer conduct its retail bookstore business on the College's premises after May 31, 2003 under the terms of the current agreement.

The College invites Campus Stores of Massachusetts, Inc. to propose a new agreement to the College, to begin June 1, 2003. Please forward your proposal to my attention as soon as possible.

Thank you for your attention to this matter.

Very truly yours,

Richard F. Sullivan, Jr.
Chief Financial Officer
Curry College

RFS/msa

bcc: Ken Quigley
     Miriam McKendall



# CAMPUS STORES OF MASS., INC.
## County Crossing
545 County Street, Taunton, MA 02780
TEL. 508-880-3070 • FAX. 508-880-3032

RECEIVED
SEP 3 0 2002

September 25, 2002

Mr. Richard F. Sullivan Jr.
Chief Financial Officer
Curry College
1071 Blue Hill Avenue
Milton, MA 02186

Dear Mr. Sullivan:

In reference to your September 17th letter, we agree that it may be desirable to update certain parts of the existing contract between Curry College and Campus Stores. As I mentioned in our telephone conversation late last week, I should be able to get back to you with a draft within a week or two.

Although we are willing to update and revise any necessary parts of the contract, I do need to be on record with the fact that we strongly maintain that our contract is valid through May 31, 2005. Therefore, we treat your notice dated September 17, 2002 as a notice of intention to terminate the current contract effective May 31, 2005, since under our agreement either party may give notice of its intention to terminate no later than six months prior to May 31st of any year.

Having said this, we accept the College's invitation to propose a new agreement. I am certain that we can update and revise the contract, including the considerations we outlined in our January 2001 proposal, to be mutually agreeable to both parties and to commence on June 1st of 2003, as you request.

I look forward to working with you on this matter in the very near future.

Sincerely,

Eric A. Cressman
President

EAC/mb



CURRY COLLEGE    MILTON, MASSACHUSETTS 02186    TELEPHONE (617) 333-2236
FAX (617) 364-2310
www.curry.edu

Office of the President
Kenneth K. Quigley, Jr.

May 18, 2005

Mr. Eric A. Cressman
President
Campus Stores of MA
645 County Street
Taunton, MA 02780

Dear Eric:

Please let this letter serve as a response to you correspondence of April 16, 2005.

I am writing to confirm the correspondence sent to you by Curry College back in September of 2002 in which we informed you that we will not be going forward with Campus Stores as a bookstore provider for the College past the expiration of our current contract – May 31, 2005.

As you are aware, this decision was made over two and one half years ago, and has been the unchanged position of the College since the time. When the College provided its notice of termination to you in September of 2002, Campus Stores indicated that it was treating the termination date as effective May 31, 2005.

Curry has not changed its decision; the College has no intention to continue its relationship with Campus Stores beyond May 31, 2005.

Eric, we are looking to large national bookstore chains which we feel will best serve the needs of Curry, its students and its faculty and staff, and have already reached out to these chains. We believe such national chains are best positioned to provide the technology, training, resources, and customer service our students, faculty and college community demand and deserve. We have not been happy with Campus Stores' level and quality of service, its high rate of turnover (both on the employee and management level) and its overall performance.

As you are aware, Higher Education is a very competitive industry. The competition to attract and retain students is keen. We do not believe Campus Stores has met, nor will meet, the demands associated with this competitive industry. As a result, we made our decision and sent you our September 2002 correspondence to terminate the relationship at the earliest possible date.

Thank you both for your attention to this correspondence, as well as for Campus Bookstores efforts over the years.

Very truly yours,

Kenneth K. Quigley, Jr.



CURRY COLLEGE     MILTON, MASSACHUSETTS 02186     TELEPHONE (617) 333-2236
FAX (617) 364-2310
www.curry.edu

Office of the President
Kenneth K. Quigley, Jr.

February 17, 2005

Mr. Eric A. Cressman
President
Campus Stores of MA
645 County Street
Taunton, MA 02780

RE:   Curry College Bookstore

Dear Eric:

I hope that this correspondence finds you well.

I am writing to inform you that Curry College will be constructing a new residence hall commencing next month. When the residence hall is completed, contemplated for August, the College Bookstore will be located in that facility for a period of time that could extend up to two years. We expect to commence renovation and expansion of the Student Center sometime between March '06 and September '06. Upon completion of the Student Center, the Bookstore would return to the Student Center.

I have enclosed a copy of the community wide email that I am sending informing the community of this matter. Additional details are contained in the email.

Eric, I'm certain that you'll be hearing from Bob O'Connell and/or Sue Pennini in connection with this move and the upcoming Cambridge College preparations.

Best wishes for a terrific spring semester.

Sincerely,

Kenneth K. Quigley, Jr.

KKQ/amg

Enclosure

Email to Faculty and Staff

RE: New Residence Hall

I am pleased to inform the Curry College Community that at the February 10 Meeting of the Board of Trustees, the Board voted unanimously to proceed with the construction of a new residence hall.

This residence hall is planned to be located at 886 Brush Hill Road. A portion of the residence hall will be located on the site currently occupied by 900 House, and 900 House will be razed to make way for the new residence hall. We are currently in the process of relocating the students who reside in 900 House.

Ultimately, the building is planned to ultimately accommodate approximately 170 beds. It will be constructed in the classic underclassmen style of center corridors and single and double rooms. The building will be clustered in pods of approximately 24 beds, giving the opportunity for the development of a sense of community and for special interest programming.

Initially, it is likely that the building will be a mixed use facility. One wing of the ground floor would be dedicated to two classrooms and the College Bookstore. This would allow us to expand dining into the space currently occupied by the Bookstore in the Drapkin Student Center. Upon completion of a new Student Center, the Bookstore would migrate back to the new Student Center. When additional classroom facilities are available, the classrooms would also migrate out, and 26 additional beds would be located in that wing.

Construction of the residence hall is scheduled to commence in March, with the residence hall ready for occupancy with our returning students in August.

I would also remind you that the College has made a determination that commencing with the Fall, 2005 semester, first year students will not be allowed to bring automobiles to Campus.

It is the outstanding results being achieved by our College – the discharge of our academic mission and the service that we render to our students and the community in so many ways – that makes the construction of this residence hall both necessary and appropriate. Curry College continues to be one of the "hottest small Colleges in New England". This is a tribute to our mission and to our people. Each year our College increases in prominence, stature, prestige and service. Thank you for your efforts that are making this occur.

Ken Quigley