IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMPUS STORES OF MASS., INC., <br><br> Plaintiff, <br><br> v. <br><br> FOLLETT HIGHER EDUCATION GROUP, INC. <br><br> Defendant. | C.A. NO. 05 CV 11116 NG |

**AMENDED VERIFIED COMPLAINT AND JURY DEMAND**

**Introduction**

This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, interference with advantageous business relations, and violation of G.L. Chapter 93A arising from Defendant's breach of a Confidentiality and Nondisclosure Agreement that it executed in connection with its prospective acquisition of Plaintiff's business. Plaintiff seeks damages as well as injunctive relief.

**Parties**

1.  Plaintiff Campus Stores of Mass., Inc. ("Campus Stores") is a Massachusetts corporation with a principal place of business located at 645 County Street, Taunton, Bristol County, Massachusetts.

2.  Follett Higher Education Group, Inc. ("Follett") is an Illinois Corporation with a registered place of business in Massachusetts located at 101 Federal Street, Boston, Suffolk County, Massachusetts.

7. On or about July 23, 2003, Defendant Follett entered into a Confidentiality and Nondisclosure Agreement (the "Agreement") with Campus Stores, a copy of which is attached hereto as <u>Exhibit A</u>. The Agreement contains the following key provisions:

> 3. The parties agree that any Confidential Information received or acquired by one party (the "Receiving Party") from the other party (the "Disclosing Party") hereunder, shall be held in trust and confidence for the Disclosing Party and Receiving Party shall not, without the prior written consent of the Disclosing Party, disclose such Information to anyone, nor use such Information for any purpose except in connection with the activities contemplated by this Agreement.
>
> 10. [...] Furthermore, the Receiving Party shall not use any Confidential Information of the Disclosing Party for any competitive purposes. **Follett-HEG agrees not to contact, solicit or accept business from, either directly or indirectly, Campus Stores' suppliers, customers or host colleges through the close of the next round of contract bidding for each such supplier, customer or host college.** The restriction in the immediately preceding sentence shall be applicable only with respect to the first time each of such contracts come up for bid or renewal following the date of this Agreement.
>
> 11. In the event of any breach or threatened breach of any provision of this Agreement, the Disclosing Party shall be entitled to immediate temporary, preliminary and/or permanent injunctive relief to prevent any such breach or threatened breach, in addition to any other relief available at law or at equity.
>
> 12. The Receiving Party indemnified and agrees to hold the Disclosing Party harmless from and against any and all losses, damages, liabilities, costs and expenses, including attorneys' fees, incurred by the Disclosing Party, arising out of or relating to the breach by the Receiving Party of any of the agreements contained herein.

(Emphasis added).

8. Based upon Follett's covenants as set forth in the Agreement, Campus Stores provided Follett with a 41 page Confidential Offering Memorandum setting forth extensive confidential information including financial data for each of Plaintiff's accounts, profit margins,

staffing models, commission structures, operating expenses, and the dates each contract was to expire.

9. In 2004, Campus Stores' contract with Nichols College expired. At or about that time, a representative from Follett sought permission to bid on the Nichols College account. Campus Stores declined to grant Follett this permission, and invoked the provisions of the Agreement as set forth above. Follett acknowledged the enforceability of the Agreement, and indicated that it would abide by its covenants not to solicit or accept business from Campus Stores' host colleges. Upon information and belief, Follett ceased its pursuit of the Nichols College account.

10. For approximately 26 years, since July 1, 1979, Campus Stores has had a contract with Curry College and has enjoyed an overall favorable relationship with the school. Campus Stores' contract with Curry College was set to expire on May 31, 2005, and would thereafter come up for bid or renewal, a fact made known to Follett vis-à-vis the confidential disclosure detailed above. Until very recently, Curry College had never indicated that it did not intend to renew Campus Stores' contract. In fact, as recently as February 2005, Curry College sent Campus Stores a letter in which the college made clear that Campus Stores was part of its future plans beyond May 2005.

11. In or about early May 2005, Campus Stores learned that Follett was in the process of soliciting or negotiating an agreement with Curry College, in direct violation of its covenants to Campus Stores pursuant to the Confidentiality Agreement. By letter dated May 5, 2005, counsel for Campus Stores wrote to Thomas Christopher, the president of Follett, to demand that Follett immediately cease and desist from further negotiations with Curry College. Follett did not send a written response to that letter.

12. In sharp contrast to Curry College's prior encouragement to submit a bid to renew the contract, Campus Stores received a letter dated May 18, 2005 from Curry College indicating for the first time that it was apparently dissatisfied with Campus Stores and that it intended to pursue a relationship with a "large national bookstore chain" instead of continuing on with Plaintiff.

13. Upon information and belief, Curry College's decision to send this letter at this time was precipitated and improperly influenced by Follett, and demonstrates Follett's unfair competition and misuse of Campus Store's Confidential Information.

14. In fact, Follett had been in contact with Curry College since approximately August 2004 and had submitted a proposal to Curry College on or about March 28, 2005 to become Curry's new bookstore operator.

15. Upon information and belief, Follett has accepted business from Curry College and is now the college's bookstore operator.

## COUNT I
### (Breach of Contract)

16. Campus Stores repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs one through 15 above.

17. There existed a contract between Campus Stores and Follett.

18. By and through its actions, as above-described, Follett has breached that contract.

19. As a direct and proximate result of said breach, Campus Stores has sustained damages.

5

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

20. Campus Stores repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs one through 19 above.

21. By and through its actions, Follett has breached the implied covenant of good faith and fair dealing in its contract with Campus Stores.

25. Follett's actions have injured Campus Stores' right to receive the fruits of the contract.

26. As a direct result of such breach, Campus Stores has been damaged.

## COUNT III
### (Interference With Advantageous Relations)

27. Campus Stores repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs one through 26 above.

28. Campus Stores contemplated an advantageous business relationship of economic benefit with Curry College.

29. Follett knew of the contemplated advantageous business relationship and, with improper motive and through improper means, intentionally and maliciously interfered with this relationship.

30. Campus Stores lost the advantage of said relationship as a direct result of Follett's conduct.

## COUNT IV
### (Violation of G.L., Chapter 93A, §§ 2 and 11)

31. Campus Stores repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs one through 30 above.

32. At all relevant times, Campus Stores and Follett were engaged in the conduct of trade or commerce.

33. Follett's conduct occurred substantially and primarily within Massachusetts.

34. Follett's conduct, as above-described, including without limitation, intentionally using Campus Stores' confidential business information in order to attempt to take business away from Campus Stores and to gain an unfair competitive advantage over Campus Stores, constitutes unfair and deceptive acts and practices within the meaning of G.L. chapter 93A, §§ 2 and 11.

35. As a direct and proximate result of Follett's conduct, Campus Stores has suffered money damages.

## COUNT V
### (Injunctive Relief)

36. Campus Stores repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs one through 35 above.

37. Plaintiff is entitled to a Permanent Injunction, enjoining Defendant Follett from contacting, soliciting or accepting business from, either directly or indirectly, Campus Stores' suppliers, customers or host colleges through the close of the next round of contract bidding or renewal for each such supplier, customer or host college.

WHEREFORE, Plaintiff Campus Stores of Mass., Inc., hereby prays that this Court allow and enter the following relief:

(1) Enter a Preliminary Injunction, and then a Permanent Injunction, enjoining Defendant Follett from contacting, soliciting or accepting business from, either directly or indirectly, Campus Stores' suppliers, customers or host colleges, including without limitation Curry College, through the close of the next round of contract bidding or renewal for each such supplier, customer or host college;

(2) Enter judgment in favor of Plaintiff and against Defendant on all counts in this Verified Complaint, plus interest, costs, attorneys' fees and multiple damages; and

(3) Enter such other relief as this Court deems just, equitable and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims so triable.

PLAINTIFF

CAMPUS STORES OF MASS., INC.

By its attorneys,

/s/ Bradley L. Croft
Christopher P. Litterio, BBO #551098
Bradley L. Croft, BBO #633347
**RUBERTO, ISRAEL & WEINER, P.C.**
100 North Washington Street
Boston, MA 02114
(617) 742-4200

Dated: June 15, 2005

## *VERIFICATION*

      I, Eric A. Cressman, on oath depose and say that I have read the foregoing First Amended Verified Complaint and swear that the factual allegations contained therein are true and accurate to the best of my knowledge, except where stated on information and belief, and there I believe them to be true. I further attest that I am duly authorized to act in this capacity on behalf of Campus Stores of Mass., Inc.

                                                                *[signature: Eric A. Cressman]*
                                                     Eric A. Cressman, President
                                                     Campus Stores of Mass., Inc.
                                                     Duly Authorized

# EXHIBIT A

# CONFIDENTIALITY & NONDISCLOSURE AGREEMENT

AGREEMENT made as of this 23rd day of July, 2003, by and between Campus Stores of Mass., Inc., a company having a place of business at 645 County Street, Taunton, Massachusetts 02780 (hereinafter "Campus Stores") and Follett Corporation Higher Education Group, of 1818 Swift Drive, Oak Brook, Illinois 60523 (hereinafter "Follett-HEG").

In consideration of the mutual promises contained herein and for other good and valuable consideration, the parties hereto agree as follows:

1. Campus Stores and Follett-HEG both have as their purpose an interest in exploring a possible business relationship which may include a sale of Campus Stores' business. In order for the parties to explore this relationship, it may be necessary for each party to disclose certain of its Confidential Information.

2. As used in this Agreement the term "**Confidential Information**" means all data or information not generally known outside of Campus Stores' or Follett-HEG's business, as the case may be, whether prepared or developed by a source outside the respective company or received by the respective company from any outside source. Without limiting the scope of this definition, "Confidential Information" includes any customer files, sales reports, customer lists, sales invoices, concepts, ideas, trade secrets, and other methods and processes, formulae, data and know-how, discoveries, product development activities, developments, improvements, inventions, techniques, business or marketing plans, strategies, forecasts, new products, software packages and related documentation, unpublished financial statements and other financial information, budgets, projections, licenses, prices, costs, patent applications, customer and supplier lists, confidential reports and communications, contracts, and any other record, materials or information relating to the present or future business, products or prospects of either party which are not generally known to others engaged in similar business or activities.

3. The parties agree that any Confidential Information received or acquired by one party (the "**Receiving Party**") from the other party (the "**Disclosing Party**") hereunder, shall be held in trust and confidence for the Disclosing Party and Receiving Party shall not, without the prior written consent of the Disclosing Party, disclose such Information to anyone, nor use such Information for any purpose except in connection with the activities contemplated by this Agreement. The Receiving Party may disclose Confidential Information to his or her attorneys, accountants or other professional advisors, provided however that such advisor shall be bound by the terms hereof.

4. All written or other tangible embodiments of the Confidential Information, including, without limitation, plans, drawings, operations, specifications, financial statements, projections, contracts, models, or data disclosed in writing (or other tangible form, including without limitation, software, firmware and magnetic media) by the Disclosing Party to the Receiving Party in connection with this Agreement shall remain the property of the Disclosing Party at all times and shall be returned or delivered to the Disclosing Party upon request of the Disclosing Party together with all copies made thereof.

5.   Each party shall have the right to refuse to accept any information under this Agreement, and nothing herein shall obligate either party to disclose to or receive from the other party, any particular information.

6.   No disclosure of Confidential Information hereunder shall be deemed to constitute or imply any license or right to use or practice the same except as expressly provided herein.

7.   Subject always to paragraph 3 above, however, the obligations of the Receiving Party with respect to the confidentiality and use of the Confidential Information of the Disclosing Party shall survive any termination of this Agreement and the cessation of the activities contemplated thereby for a period of five (5) years after disclosure of the relevant Confidential Information.

8.   This Agreement shall not constitute an offer to sell the business of the Disclosing Party, or any portion thereof; the purpose of this Agreement being to allow the parties hereto the opportunity to determine if further negotiations concerning a sale of the business of the Disclosing Party, or portion thereof, should continue.

9.   Upon written request of the Disclosing Party, the Receiving Party shall immediately return to the Disclosing Party any and all Confidential Information and copies thereof subject to this Agreement.

10.  The Receiving Party agrees that for a period of two (2) years following the receipt of any Confidential Information from the Disclosing Party, it shall not hire any employee of the Disclosing Party, nor solicit or induce any employee of the Disclosing Party to terminate their employment with the Disclosing Party. Furthermore, the Receiving Party shall not use any Confidential Information of the Disclosing Party for any competitive purposes. Follett-HEG agrees not to contact, solicit or accept business from, either directly or indirectly, Campus Stores' suppliers, customers or host colleges through the close of the next round of contract bidding for each such supplier, customer or host college. The restriction in the immediately preceding sentence shall be applicable only with respect to the first time each of such contracts come up for bid or renewal following the date of this Agreement.

11.  In the event of any breach or threatened breach of any provision of this Agreement, the Disclosing Party shall be entitled to immediate temporary, preliminary and/or permanent injunctive relief to prevent any such breach or threatened breach, in addition to any other relief available at law or at equity.

12.  The provisions of this Agreement shall be deemed severable, and invalidity or unenforceability of any one or more of the provisions hereof, shall not affect the validity and enforceability of the other provisions hereof.

13.  The Receiving Party indemnifies and agrees to hold the Disclosing Party harmless from and against any and all losses, damages, liabilities, costs and expenses, including attorneys'

-2-

fees, incurred by the Disclosing Party, arising out of or relating to the breach by the Receiving Party of any of the agreements contained herein.

14. This Agreement supersedes all prior agreements, understandings, representations and statements, whether oral or written, between the parties relating to the subject matter of this Agreement. The terms of this Agreement may not be changed except by subsequent written agreement duly executed by each of the parties.

15. Any notice given under this Agreement shall be in writing and delivered by first class mail, facsimile or telex to the parties at the address set forth above, unless changed by written notice.

16. This Agreement shall be governed by and interpreted in accordance with the laws of The Commonwealth of Massachusetts. The parties hereby agree to submit to the exclusive jurisdiction of the courts of The Commonwealth of Massachusetts, and as necessary, the Federal courts of the United States of America located in such state, in respect of the interpretation and enforcement of all matters relating to this Agreement, and hereby waive and agree not to assert, as a defense in any action, suit or proceeding for the interpretation or enforcement of this Agreement, that such respective party is not subject thereto or that such action, suit or proceeding may not be brought or is not maintainable in said court or that this Agreement may not be enforced in or by said courts.

IN WITNESS WHEREOF the parties hereto have executed this Agreement under seal the day and year first written above.

CAMPUS STORES OF MASS, INC.

By: *Eric A. Cressman*
Name: ERIC A. CRESSMAN
Title: PRESIDENT

FOLLETT HIGHER EDUCATION GROUP

By: _____
Name: Scott Deaton
Title: Executive Vice President, Marketing

U:\Doc\Campus Stores\Confidentiality Agreement - 6-30 - Clean.doc

3