UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMPUS STORES OF MASS., INC., <br><br> Plaintiff, <br><br> v. <br><br> FOLLETT HIGHER EDUCATION GROUP, INC. <br><br> Defendant. | C.A. No. 05 CV 11116 NG |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S *REVISED* MOTION FOR CLARIFICATION AND/OR RECONSIDERATION OF PRELIMINARY INJUNCTION AND, ALTERNATIVELY, FOR STAY PENDING APPEAL**

Plaintiff Campus Stores of Mass., Inc. ("Campus Stores") hereby opposes Defendant Follett Higher Education Group, Inc.'s ("Follett") *Revised* Motion for Clarification and/or Reconsideration of Preliminary Injunction. Follett's motion should be denied because:

1. Follett incredibly asserts that a **contract signed almost one month after oral argument,** at which this Court made a finding in favor of Plaintiff of a likelihood of success on the merits on its breach of contract claim, should somehow relieve Follett from an injunction which is necessary to protect Campus Stores. Despite being explicitly forewarned by the Court that Campus Stores was likely to prevail, Follett and Curry College ("Curry") continued negotiating a contract which they ultimately signed on July 18 and 20, nearly one month after oral argument on the motion for preliminary injunction. Rather than supplement the record at that time

and give the Court a chance to fashion its order appropriately, however, Follett decided to withhold this information. This concealment is consistent with the deception perpetrated by Follett and Curry for 11 months leading up to the filing of this case. This Court, under the belief that the parties had not yet signed a contract, entered the injunction preventing Follett and Curry from signing a contract which, at the time of oral argument, was "impending".[1] Having completely disregarded its duty of candor to this tribunal, Follett now tries to argue that the contract should carry the day and require the Court to grant Follett relief from the injunction.[2] Follett is undeserving of the Court's protection. Its underhanded dealings before and after the lawsuit was filed make it a candidate for punishment, not sympathy. Unfortunately, due to Follett's deception, the order granting the injunction should be clarified, but that clarification should not benefit Follett. Instead, the order should require Follett to withdraw forthwith from operating the Curry bookstore, and should award Campus Stores' its attorneys' fees in connection with opposing this motion.

2. Follett's assertion that the court failed to understand that Follett was operating Curry's bookstore as of June 1, 2005, prior to oral argument, and prior to its decision, is nothing more than an attempt to raise a new argument which Follett strategically decided not to raise earlier. The Court was aware that Follett was

---

[1] By e-mail June 23, one day before oral argument, counsel for Campus Stores requested a copy of the contract between Follett and Curry. The next day in court, counsel for Follett replied that he received the e-mail too late so he was unable to get a copy of the contract. In fact, the contract did not exist until one month later.

[2] Follett actually tried to deceive the court and Campus Stores into believing that the contract had been signed and in place as of June, 2005. In its original Motion for Reconsideration, Follett failed to disclose that the contract was signed **after** oral argument, while repeatedly implying that it was in place before oral argument. It was not until Campus Stores' counsel asked for the date the contract was signed that Follett filed a revised motion and affidavit setting forth the signature dates.

2

operating the bookstore as this fact had been pointed out in Campus Stores' Amended Motion for Preliminary Injunction, and had been alleged in the Amended Verified Complaint; Follett admitted this allegation in its Answer only after the hearing. Since such an admission at the time of the hearing would have established a breach of the contract between Follett and Campus Stores, and would have contradicted Follett's position that Campus Stores could not establish a breach of contract, Follett apparently decided not to rely on this argument in opposing Campus Stores' motion for an injunction. Follett must live with the consequences of its tactical decision and should not be permitted to take another bite at the apple simply because its previous strategy failed.

3. The remaining bases for reconsideration – Campus Stores' asserted failure to establish irreparable harm and the public interest (i.e., Curry's students and faculty) – have been adequately briefed and argued, and based on the Court's 22 page decision, carefully weighed and considered. The motion for reconsideration simply rehashes those arguments and should, therefore, be denied.

4. Follett's motion to stay the injunction pending an appeal also lacks merit. Follett cannot establish that it is likely to succeed on appeal. The appeals court reviews that grant of an injunction under an abuse of discretion standard. Given this Court's finding of a high likelihood of success on the merits, and its careful balancing of the remaining factors, the appeals court is unlikely to find an abuse of discretion in granting the injunction.

## II.  ARGUMENT

### A.  Standard for Motion for Reconsideration

Although a federal district court has the discretion to reconsider interlocutory orders, "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Davis v. Lehane*, 89 F. Supp. 2d 142, 148 (D. Mass. 2000) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). A motion for reconsideration is not an opportunity to raise new facts. *In re Mutual Life Insurance Company of New York Premium Litigation*, 299 F.Supp.2d 4, 7 (D. Mass. 2004). "Generally, a motion for reconsideration is not a vehicle for giving an unhappy litigant an additional chance to sway the judge, nor is it intended to allow a party to make arguments already presented to, and rejected by, the court." *Id.* (quoting *Froudi v. United States*, 22 Cl. Ct. 290, 300 (1991)). A court should grant a motion for reconsideration "only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Davis v. Lehane*, 89 F. Supp. 2d at 147, citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, §4478, at 789-90 (1981).

### B.  The Contract Signed Three Weeks After Oral Argument Cannot Form the Basis for Reconsideration

Follett bases its motion on its belief that the Court was "under the misimpression that Follett had not yet contracted with Curry College to operate the school's bookstore" when "[i]n fact, Follett has been operating the Curry bookstore since June 1, 2005, before the June 24 hearing on the motion for preliminary injunction and the August 2 issuance of the Injunction." Revised Motion at p. 1. Follett goes on to state: "In fact, Follett had already commenced

4

performing <u>under the contract</u> with Curry and operating the bookstore weeks prior to the June 24 hearing and over two months prior to the August 2 issuance of the Injunction." Revised Motion at p. 4 (emphasis added). Follett is suggesting to this Court that it had contracted with Curry as of June 1, 2005, well before issuance of the Order, which should have thereby rendered Campus Stores' motion moot since the harm Campus Stores was seeking to avoid had already occurred.

Follett's position is misleading: it did not sign the contract with Curry until nearly a month after oral argument. At that time, it made a calculated decision not to inform the Court that the "impending" contract had been signed. Having made the decision to withhold this information from the Court, Follett cannot now seek to introduce this evidence to obtain a different result. "A party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend." *Davis v. Lehane*, 89 F. Supp. 2d at 148 (quoting *Renfro v. City of Emporia*, 732 F. Supp. 1116, 1117 (D. Kan. 1990) *aff'd*, 948 F. 2d 1529 (10th Cir. 1991), *cert. dismissed*, 503 U.S. 95, 112 S. Ct. 1310, 117 L.Ed. 2d 510 (1992)); *see also Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997) (motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment"); *In re Mutual Life Insurance Company of New York Premium Litigation*, 299 F.Supp.2d at 7 (D. Mass. 2004) ("the time to [introduce new evidence] was prior to this Court's original ruling").

While this should be sufficient for the Court to deny Follett's motion for reconsideration, Follett's brazenly deceptive conduct brings it to this Court with unclean hands and forms an additional reason for denial of its motion. As the Court found in its Memorandum and Order, Follett and Curry were secretly negotiating for almost a year prior to the expiration of Campus

5

Stores' contract with Curry. All the while, Follett and Curry knew Follett was contractually prohibited from doing so. In May of 2005, when Campus Stores got wind of their negotiations, it sent Follett a cease and desist letter. On May 18, 2005, only a few hours after Campus Stores' counsel explained to Follett's counsel that Campus Stores believed it was still in the running for the Curry account, Curry wrote to Campus Stores to notify it that its contract would not be renewed. Later in May, Campus Stores sent Curry a letter notifying it that Campus Stores intended to seek judicial enforcement of its contract with Follett. Campus Stores filed this lawsuit in state court on May 26, and had obtained a hearing scheduled for May 31, one day before Follett was due to take over the bookstore. Rather than attend the hearing and obtain court guidance as to the propriety of its actions, Follett removed the case to federal court, thereby delaying the hearing until June 24. In the interim, Follett and Curry charged forward and executed Follett's takeover of the bookstore – despite knowledge that there was a pending motion to enjoin that conduct.

On May 31, Follett filed its opposition and supporting affidavits. Those documents failed to inform the Court that Follett was taking over on June 1 pursuant, it now claims, to a five year contract. Instead, Follett attached documents which left the Court and Campus Stores with the impression that Curry "intended to accept Follett's proposal and that any unresolved issues would be settled in the near future, whereupon a contract would be formalized." *See Memorandum and Order,* p. 9. At oral argument, despite the opportunity, and indeed the duty, to notify the Court of the state of affairs, Follett failed to come clean. At the end of the hearing, the Court stated:

> "I will make a finding right now of likelihood of success on the merits. I'm going to reserve the finding of irreparable harm."

Transcript p. 23.

Despite this admonition from the court, Follett continued to negotiate its contract with Curry for three more weeks before it was signed on July 18 and 20.[3] In another calculated decision, Follett failed to notify the Court that the contract was signed, and instead waited until after the Court rendered its decision to inform the Court and Campus Stores that the contract had been signed.

Follett cannot be rewarded for its intentional deception of the Court and Campus Stores. "A party seeking to invoke the aid of equity should not be encouraged to call the other party's attention to his left hand, while surreptitiously pocketing the family jewels with the right hand." *K-Mart v. Oriental Plaza,* 875 F.2d. 907, 911 (1st Cir. 1989). Nor should it be relieved from its repeated decisions to charge forward with a contract when it knew that Campus Stores was seeking an injunction, and particularly after it knew the Court found that there was a likelihood of success on the merits of Campus Stores' breach of contract claim. As the First Circuit held in *K-Mart*, "[Defendant] OPI's loss, though considerable – its construction investment, the expense of razing the offending structure, diminution in rental receipts from the Center – did not so greatly overbalance the harm to plaintiff as to demand a different outcome. **After all, appellant's wound, deep as it appears, was self-inflicted.**" *K-Mart*, 875 F.2d at 916 (emphasis added). The Court should deny Follett's motion for reconsideration.

C. **Follett's Failure Previously To Argue that it Was Operating the Bookstore Prevents it from Making that Argument Now**

In its initial opposition to Campus Stores' motion for a preliminary injunction, and at oral argument, Follett failed to argue that it was operating Curry's bookstore. This appears to have been a conscious tactical decision. At the time of oral argument, one of the bases for Follett's opposition was that Campus Stores could not establish a breach of contract arguing that Follett

---

[3] Counsel for Curry was present in court and observed the proceedings.

7

had not used Campus Stores' confidential information in its negotiations with Curry. Follett tried to avoid having to explain that portion of the contract prohibiting it from accepting Curry's business. Obviously, had it argued that it was operating the bookstore, and ultimately had it informed the Court it had signed the contract, Follett essentially would have admitted that it breached the contract. It therefore chose not to make that argument, despite having all of the supporting facts and information available to it at that time.

Now, however, only after the Court rejected Follett's position and issued the injunction, Follett has decided to highlight its operation of the Curry bookstore as a reason for the Court to reconsider the injunction. Having had the opportunity to present that argument prior to the Court's decision and having made the strategic decision not to do so, Follett has waived that argument. *See Davis v. Lehane,* 89 F. Supp. 2d at 148 ("A party's failure to present his strongest case in the first instance does not entitle him to a second chance"). Accordingly, these facts constitute neither new evidence nor clear error of law upon which this Court should reconsider granting the injunction.

Ultimately, the issue of whether Follett had been operating Curry's bookstore and later whether it had a five year contract to do so would not have changed this Court's power to issue the injunction. For example, in *K-Mart v. Oriental Plaza*, the court upheld injunctive relief requiring the extraordinary measure of demolishing a newly constructed building. The fact that the building had already been constructed at the time the court issued the injunction did not prevent the court from issuing the injunction. In the present case, the fact that Follett was already operating Curry's bookstore does not automatically mean that the Court cannot issue an injunction enjoining Follett from proceeding with that contract. If an injunction can require a building to be demolished, it certainly can require contractual parties to disengage.

In the event the Court considers Follett's argument, it should nonetheless deny reconsideration. When Curry terminated Campus Stores' contract, it gave Stores 12 days notice within which time it was required to vacate the store. Follett has now had longer than that period from the date of the order granting the injunction to remove itself from the school. Nor should the Court be sympathetic to the argument that Curry cannot find another operator on such short notice. Curry has been on notice since May that Campus Stores was seeking this injunction; it should have been making contingency plans for the eventual order. It can now contact the other national chains it claims it had contacted during its RFP process. Also, Campus Stores stands ready, willing and able to consider any reasonable proposal by Curry to return immediately to operate the bookstore. The fact that these may not be Curry's first choices should not rob Campus Stores of the relief necessary for it to protect its business interests.

### D. Follett's Remaining Arguments are Simply Attempts to Reargue the Motion for Preliminary Injunction

The remainder of Follett's argument in its Motion for Reconsideration is a retread of the argument it already presented to the Court. "A motion for reconsideration is not a means by which parties can rehash previously made arguments." *See In re Wedgestone Fin.,* 142 B.R. 7, 8 (Bankr.D.Mass.1992). "Generally, a motion for reconsideration is not a vehicle for giving an unhappy litigant an additional chance to sway the judge, nor is it intended to allow a party to make arguments already presented to, and rejected by, the court." *Davis v. Lehane,* 89 F.Supp.2d at 148 (quoting *Froudi v. United States,* 22 Cl.Ct. 290, 300 (1991)). Despite the Court's finding that there was a sufficient showing of irreparable harm to justify issuance of the injunction, especially given Campus Stores' strong likelihood of success on the merits, Follett continues to challenge that finding, without presenting any new evidence, law or argument.

9

Likewise, Follett already raised the issue of the resulting burden an injunction would place on Curry College's students and faculty, although less dramatically than in its present motion. Given the many chances Follett and Curry College had to avoid such a result, it is hard to fathom how these parties can in good conscience blame the Court for the position in which they placed these students and faculty.[4] In rationalizing a similar balancing of the equities in favor of the party seeking the injunction, the *K-Mart* court held that the defendant's "loss, though considerable--its construction investment, the expense of razing the offending structure, diminution in rental receipts from the Center--did not so greatly overbalance the harm to plaintiff as to demand a different outcome. After all, appellant's wound, deep as it appears, was self-inflicted." *K-Mart*, 875 F.2d at 916. So too, here, Curry College and Follett's wounds were self-inflicted. Had Follett played by the rules and abided by the terms of its contract, neither Follett nor Curry College nor its students or faculty would be in their present predicament.

### E.   This Court Should Not Stay the Injunction Pending Appeal.

Follett has failed to set forth any compelling reasons why the injunction should be stayed pending appeal. The criteria to be satisfied in a motion to stay under Fed.R.Civ.P. 62(c) are essentially equivalent to those required for an injunction: (1) likelihood of success on the merits, (2) irreparable harm, (3) balance of harm favoring the moving party, and (4) a superior claim to the general public interest. *Buntzman v. Springfield Redevelopment Authority*, 918 F. Supp. 29, 30 (D. Mass. 1996). Follett cannot meet any of these criteria.

First, Follett has utterly failed to show that it is likely to succeed on the merits of its appeal. The appeals court reviews the district court's grant or denial of a preliminary injunction

---

[4] Curry College could have elected to go with any other bookstore operator than Follett, Follett could have decided to set its sights on a different account, Follett could have sought Campus Stores' permission to contract with Curry College, Follett could have attended the state court hearing and sought resolution of the injunction prior to proceeding with Curry, Follett could have waited until the Court issued its decision before signing the contract. Instead, Follett proceeded without caution and with only its self-interests at heart.

10

for abuse of discretion. *Bl(a)ck Tea Society v. City Of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) (internal citations ommitted). "This is a deferential standard of review, and the deference that it entails is most appropriate with respect to issues of judgment and the balancing of conflicting factors." *Id.* (quoting *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 158 (1st Cir. 2004)). Based upon this Court's 22-page decision, it is highly unlikely that Follett will successfully carry its substantial burden to show that Judge Gertner abused her discretion in granting the injunction. Follett does not provide a single compelling argument as to how the Court abused its discretion. Instead, Follett merely states that Campus Stores failed to show irreparable harm and a likelihood of success on the merits of its claims. Such a conclusory, circular argument is unlikely to prevail on appeal.

Nor has Follett shown that it would suffer irreparable harm in the absence of a stay. Follett's contention that it would suffer irreparable harm in the absence of a stay is particularly ironic given the considerable effort it has taken to argue the opposite. Specifically, Follett has taken the position throughout this case that Campus Stores' alleged improper ouster from Curry does not constitute irreparable harm because of the availability of monetary damages to cover such injury. Now, however, when it is the party being ousted from Curry, Follett conveniently reverses its position to argue that such harm would <u>not</u> be compensable by monetary damages. Such contradictory positions undermine Follett's argument. In fact, because Follett had no right to receive the benefits of a contract with Curry in the first instance, the Court's order requiring it to cease its operation of Curry's bookstore does not and cannot constitute irreparable harm.

The balancing of the harms weighs strongly in favor of enforcing the injunction. A stay would only permit Follett to become more deeply entrenched at Curry and would make the inevitable separation that much more difficult. The injunction, on the other hand, will prompt

Curry to act now to find a new bookstore operator, which is in the best interests of all involved. As stated above, Campus Stores stands ready, willing and able to consider any reasonable proposal from Curry to return to the bookstore to run it. This would further mitigate any potential inconvenience to outside parties.

Finally, the public interest in protecting the solemnity of contracts is only served by enforcement of the Agreement between Follett and Campus Stores through the issuance of the injunction. Staying the injunction and permitting Follett to continue to reap rewards for its unabashed breach of the contract would send a worrisome message to companies that they may breach agreements of this sort without facing consequences. It would also have a corrosive effect on the reliability of this type of contract, and may have a chilling effect on the free exchange of information among companies negotiating a corporate acquisition. "[T]here is a strong public interest in fair dealing and the solemnity of contracts; if commerce is to function in our capitalistic system, entrepreneurs must play by the rules." *K-Mart*, 875 F.2d at 916.

For these reasons, this Court should not stay the injunction and should deny Follett's motion.

### III.  Conclusion

For the foregoing reasons, this Court should deny Follett's Motion for Clarification and Reconsideration and, Alternatively, For Stay Pending Appeal. Not only is there no new evidence or law to justify reconsideration, but also Follett's motion is based on a misleading premise that it had contracted with Curry College in June 2005 prior to the hearing on Campus Stores' motion. In fact, Follett had not contracted with Curry College until July 18, 2005 -- three and a half weeks after the hearing. Follett failed to bring its contract with Curry to the Court's attention prior to the issuance of the injunction, despite having had ample opportunity to do so.

As such, Follett has failed to present any compelling reasons to justify reconsideration, and this Court should deny Follett's motion.

Follett has likewise failed to meet its burden of demonstrating that it is entitled to a stay of the injunction pending appeal. It is evident that Follett filed its motion in order to delay enforcement of the injunction so that it may continue to reap the rewards of its blatant breach of contract. Accordingly, this Court should not stay issuance of the injunction but should rather enforce the injunction with the full weight of the court. Unfortunately, since Follett withheld the fact that it had signed the contract, the Court should clarify the order such that it requires Follett to immediately terminate its operation of Curry's bookstore. Finally, given the misleading statement by Follett, this Court should award Campus Stores its costs of opposing the motion.

<p style="margin-left: 40%;">
Respectfully Submitted,

CAMPUS STORES OF MASS., INC.

By its attorneys,

/s/ Bradley L. Croft
Christopher P. Litterio, BBO #551098
Bradley L. Croft, BBO #633347
RUBERTO, ISRAEL & WEINER, P.C.
100 North Washington Street
Boston, MA 02114
(617) 742-4200
</p>

Dated: August 17, 2005