UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CAMPUS STORES OF MASS., INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-11116 NG |
| FOLLETT HIGHER EDUCATION GROUP, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

**(PROPOSED)
FOLLETT HIGHER EDUCATION GROUP, INC.'S REPLY
TO PLAINTIFF'S OPPOSITION TO *REVISED* MOTION FOR CLARIFICATION
AND/OR RECONSIDERATION OF PRELIMINARY INJUNCTION AND,
<u>ALTERNATIVELY, FOR STAY PENDING APPEAL</u>**

Defendant Follett Higher Education Group, Inc. ("Follett") hereby submits the present reply memorandum to respond to the spurious allegations contained in the opposition to Follett's Revised Motion for Clarification and/or Reconsideration of Preliminary Injunction and, Alternatively, for Stay Pending Appeal ("Motion for Clarification") filed by plaintiff, Campus Stores of Mass., Inc. ("Campus Stores")("Opposition").  In an obvious attempt to discredit Follett and to distract the Court from consideration of the relevant issues, Campus Stores alleges in its Opposition that Follett attempted to "conceal" the fact that a written contract between Follett and Curry College ("Curry") was only executed on July 18 and 20, 2005, after the June 24, 2005, oral argument on Campus Stores' Motion for Preliminary Injunction. (Opposition, pp. 1-2 and n. 2).  Campus Stores also suggests that Follett failed to disclose prior to the June 24 oral argument that it had been operating the Curry bookstore since on or about June 1, 2005.

(Opposition, p. 6).  Indeed, Campus Stores, without foundation, accuses Follett of "completely disregard[ing] its duty of candor to this tribunal" and engaging in "intentional deception of the Court." (Opposition, pp. 2 and 7).  In so doing, Campus Stores not only distorts the issue raised in the Motion for Clarification, but makes a series of misleading representations regarding the history of this case.

A.     **The Execution Of A Written Contract Is Irrelevant To The Issue Raised By Follett's Motion For Clarification, Which Addressed The Court's Apparent Misimpression That Follett Had Not Yet Begun Operating Curry's Bookstore.**

As an initial matter, Campus Stores truly misses the mark in its Opposition with its misguided obsession regarding the date(s) on which the written contract was executed.  In fact, the issue of when the *written* contract was executed is nothing more than a red herring.  Obviously, Follett had to have contracted (or reached agreement) with Curry in order to begin operating the school's bookstore on or about June 1, 2005.  Therefore, the fact that the contract (or agreement) was not formalized in a written document until several weeks later is, quite frankly, irrelevant for purposes of Follett's Motion for Clarification and Follett did not intend to attach any undue significance to that written document by submitting it as an exhibit with the motion.  What is important and what Follett sought to reinforce in the Motion for Clarification was the fact that Follett had been operating the Curry bookstore since June 1—a fact that the Court did not appear to understand when it issued its Memorandum and Order[1] and Preliminary Injunction.  Whether the contract by which Follett began operating the bookstore was oral or written (or both) was irrelevant.

---

[1] Memorandum and Order Re: Plaintiff's Motion for Preliminary Injunctive Relief, August 2, 2005.

2

B.  **Follett Did Not Conceal The Date(s) On Which The Written Contract Was Executed And Had No Reason To Do So Given The Irrelevance Of That Issue**.

Campus Stores contends in its Opposition that Follett somehow made a tactical decision to conceal from the Court the fact that it did not execute the *written* contract with Curry until July 18 and 20, 2005. (Opposition, pp. 1-2, 4-8). This contention is both disingenuous and misleading. Follett made no effort to conceal the date(s) on which the *written* contract was executed. After Follett filed its original Motion for Clarification on August 8, 2005, counsel for Campus Stores forwarded counsel for Follett an email inquiring as to the date on which the written contract, which is dated effective June 1, 2005, was executed. Despite having no obligation to do so, counsel for Follett readily provided that information to counsel for Campus Stores. True and accurate copies of the e-mails exchanged between counsel on this topic are attached as Exhibit "A." This is hardly consistent with the conduct of a party attempting to conceal the date of execution.[2]

Moreover, Follett had no reason, never mind the nefarious ones that Campus Stores' ascribes to it in the Opposition, to conceal information regarding the execution of a *written* contract. The preliminary injunction that Campus Stores' actually sought was, in relevant part, to enjoin Follett from "[c]ontacting, soliciting or accepting business from, either directly or indirectly, Campus Stores' suppliers, customers or host colleges, including, without limitation Curry College, through the close of the next round of contract bidding for each supplier, customer or host college." ((Proposed) Order – Preliminary Injunction).[3] Clearly, Campus

---

[2] Ironically, Follett promptly filed its revised Motion for Clarification on August 12, 2005, clarifying the date(s) on which the *written* contract was executed, in order to avoid having the Court distracted by Campus Stores' spurious allegations regarding that irrelevant issue, not because it had been found out as Campus Stores now suggests.

[3] The proposed Order was attached as Exhibit A to both Plaintiff's Motion for Preliminary Injunction and Plaintiff's Amended Motion for Preliminary Injunction.

Stores was not merely attempting to stop Follett from entering into a written contract with Curry; it was trying to stop Follett from accepting business with Curry, regardless of whether that business relationship was formalized in a written document.  Moreover, contrary to the position taken in the Opposition (at p. 8), it is not Follett's position that the existence of a written contract somehow divests this Court of the power to issue an injunction.  Thus, the issue has never been the timing of the execution of a written contract and Follett had no reason to mislead the Court on that issue.

C.     **Contrary To Campus Stores' Assertion, The Fact That Follett Has Been Operating The Curry Bookstore Since June 1, 2005 Was Not Concealed From The Court.**

In an inexplicable contradiction, at one point Campus Stores asserts that the Court was aware of the fact that Follett had been operating the Curry bookstore since June 1, 2005 (Opposition, pp. 2-3), only to turn around later and assert that Follett "failed to come clean" with this information either in its original opposition and affidavits[4] or at the hearing on June 24, 2005.  (Opposition, p. 6).  These assertions are not only inconsistent, but incomprehensible and misleading.

First, Campus Stores suggests that the Court was aware of the fact that Follett had been operating the Curry bookstore since June 1, 2005, but that Follett made a tactical decision not to admit that fact out of fear that it would immediately be deemed to have admitted to a breach of its agreement with Campus Stores.  (Opposition, pp. 2-3).  This is patently absurd.  Follett has never denied that it has been operating the Curry bookstore since on or about June 1, 2005, and to do so would have been pure folly given that anyone could have walked into the Curry bookstore after that date and quickly ascertained that Follett had taken over.  Moreover, counsel

---

[4] Follett's memorandum and affidavits in opposition to Campus Stores' original Motion for Preliminary Injunction were filed on May 31, 2005, before Follett had taken over operation of the Curry bookstore.

4

for Follett sent counsel for Campus Stores an email on Monday, May 30, 2005, expressly advising him that Follett intended to proceed to take over the Curry bookstore operation. A true and accurate copy of the email is attached hereto as Exhibit "B." It was on the basis of this email that Campus Stores turned around and, on May 31, 2005, filed an emergency motion for a hearing with this Court. (Emergency Motion for Immediate Hearing on Plaintiff's Motion for Preliminary Injunction, p. 3 and Ex. B). In fact, Campus Stores attached the email to its motion and asserted that, "Most immediately, there is a grave and urgent danger that, as of tomorrow June 1, 2005, Follett will accept business from Curry College." (Emergency Motion for Immediate Hearing on Plaintiff's Motion for Preliminary Injunction, p. 1). Since as early as May 30, therefore, Follett has made no secret of its intent to take over the Curry bookstore. Nor has it subsequently made any secret of the fact that it proceeded to do just that on or about June 1, 2005.

Indeed, the Court was alerted prior to the June 24, 2005 hearing to the fact that Follett had followed through on its intent and taken over the Curry bookstore. The day before the hearing, on June 23, 2005, Campus Stores itself filed an Amended Motion for Preliminary Injunction, wherein it specifically stated that "Follett has breached the Agreement by contacting, soliciting *and accepting the business of Curry College*." (Plaintiff's Amended Motion for Preliminary Injunction, p. 2)(emphasis added). In the accompanying amended memorandum, Campus Stores further alerted the Court that "Follett has breached the Agreement by contacting, soliciting and *now accepting the business of Curry College*" and that "Follett has accepted business from Curry College *and is now the college's bookstore operator*." (Plaintiff's Amended Memorandum of Law in Support of Motion for Preliminary Injunction, pp. 2 and 6)(emphasis added). In fact, the entire amended memorandum is replete with direct and indirect

references to the fact that Follett has already proceeded to take over operations at Curry, and Campus Stores even devotes a section of the brief to attempting to refute the fact that the issuance of an injunction forcing Follett to leave would result in an injustice to Curry and its students and faculty.  (Plaintiff's Amended Memorandum of Law in Support of Motion for Preliminary Injunction, pp. 15-16).  Finally, Campus Stores also filed an amended complaint on the date of the hearing, again specifically alleging that "Follett has accepted business from Curry College and is now the college's bookstore operator." (Amended Verified Complaint and Jury Demand, ¶ 15).

Meanwhile, the hearing itself on June 24, 2005 proceeded under the acknowledgement that Follett was already operating the Curry bookstore.  Counsel for Campus Stores itself noted at the hearing that, "I don't think there's a serious dispute that they breached the contract.  The contract says no contact, no solicitation and no acceptance.  [Follett] clearly had contact, *and they clearly accepted the business from Curry*."  (Transcript, p. 5)(emphasis added).  Later, counsel for Campus Stores noted that it had unsuccessfully attempted to get into court "before the horse was out of the barn." (Transcript, p. 7).  Accordingly, both of the parties were clearly under the impression that the Court understood that Follett was already operating the Curry bookstore.

In retrospect, whether that impression was valid is unclear given the Memorandum and Order and Preliminary Injunction issued by the Court on August 2, 2005, both of which at least appear to have been issued under the misimpression that Follett had not yet taken over operation of the Curry bookstore.  In no event, however, did Follett attempt to conceal information from the Court or deceive the Court by suggesting that Follett had not yet taken over the Curry bookstore.  As set forth above, Campus Stores' allegations to the contrary are demonstrably false

6

and clearly made in an effort to taint the Court's consideration of Follett's Motion for Clarification.

D.      **Follett Had No Way Of Knowing That Its Rightful Removal Of This Action Would Result In A Delay In The Hearing On Campus Stores' Motion For An Injunction.**

In yet another baseless allegation, Campus Stores suggests that Follett waited until the final hours to remove Campus Stores' state court action in an intentional effort to deprive Campus Stores of a hearing on its Motion for Preliminary Injunction. (Opposition, p. 6). Nothing could be further from the truth. Campus Stores, with its contract with Curry set to expire on May 31, 2005, filed its original Verified Complaint and Motion for Preliminary Injunction in Suffolk Superior Court on Thursday, May 26, 2005, and obtained a hearing date for Tuesday, May 31, 2005 (the first business day after the Memorial Day weekend). On Friday, May 27, 2005, the day after Campus Stores' state court filing, Follett, as was its right, immediately removed the action to this Court.

Contrary to Campus Stores' suggestion, Follett had no way of knowing or anticipating that the act of removal would significantly delay a hearing on Campus Stores' application for an injunction. Indeed, Follett knew that Campus Stores intended to seek an immediate hearing in this Court, which Campus Stores did on May 31 by filing its Emergency Motion for Immediate Hearing on Plaintiff's Motion for Preliminary Injunction. Still further, counsel for Follett advised counsel for Campus Stores that he was available as early as that same day (May 31) to appear for a hearing if this Court chose to schedule one, and Campus Stores made note of that availability in its emergency motion.[5] Ultimately, the Court, for its own reasons, chose not to schedule a hearing on Campus Stores' motion until several weeks later on June 24, 2005. For

---

[5] "Defendant is aware of Plaintiff's intent to have its motion heard by this Court today and is available to appear for hearing." Emergency Motion for Immediate Hearing on Plaintiff's Motion for Preliminary Injunction, p. 2.

7

Campus Stores to suggest, however, that this delay was the product of an underhanded scheme on Follett's part is simply specious.

WHEREFORE, for the reasons set forth in the revised Motion for Clarification, and particularly the significant disruption to Curry and its students and faculty that would occur if Follett is enjoined from continuing to operate the school's bookstore, Follett respectfully requests that the Court clarify and/or reconsider the Preliminary Injunction issued on August 2, 2005 and thereafter deny Campus Stores' request for the same.  Alternatively, Follett requests that the Court issue a stay of any such injunction, pursuant to Fed. R. Civ. P. 62(c), while it pursues any and all interlocutory appeals.

Respectfully submitted,

FOLLETT HIGHER EDUCATION GROUP, INC.

By its attorneys,

/s/ Mark Berthiaume
Mark A. Berthiaume, B.B.O. No. 041715
Timothy E. Maguire, B.B.O. No. 630773
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800

DATED:  August 24, 2005

# Berthiaume, Mark

**From:** Chris Litterio [cpl@riw.com]
**Sent:** Wednesday, August 10, 2005 7:51 AM
**To:** Berthiaume, Mark
**Subject:** Campus Stores/Follett

Mark, the contract has an effective date, but doesn't have a date of execution; can you let me know when the contract was actually signed by each party. Also, can you confirm that there are no side agreements, amendments or modifications? Thanks.

Christopher P. Litterio Esq.
Ruberto, Israel & Weiner, P.C
100 North Washington St.
Boston, MA  02114
Tel:  617.742.4200
Fax: 617.742.2355
E-mail: CPL@riw.com
www.riw.com

Confidentiality Note: This email and any accompanying attachments contain information from the law firm of Ruberto, Israel & Weiner P.C. which may be confidential and/or privileged. The information is intended only for the use of the individual or entity named in the e-mail. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this e-mail and its attachments is strictly prohibited, and that the e-mail should be deleted from your system immediately. If you have received this e-mail in error, please notify us immediately by telephone at 617.742.4200 so that we may take appropriate remedial action. Thank you.

# Berthiaume, Mark

**From:** Berthiaume, Mark
**Sent:** Thursday, August 11, 2005 1:08 PM
**To:** 'Chris Litterio'
**Cc:** Maguire, Tim
**Subject:** RE: Campus Stores/Follett

Chris,
My understanding is that the final execution of the contract occurred on or about July 18. I am not aware of any amendments or side agreements. The court has not yet scheduled a hearing on our motion. We intend to let the court know by letter today that you and I are unavailable next week. I assume that you will be back in the office on Aug. 22. Please let me know if I am incorrect. Mark

Mark A. Berthiaume
SEYFARTH SHAW LLP
Two Seaport Lane
Suite 300
Boston, MA 02210
617-946-4990
617-946-4801 fax
mberthiaume@seyfarth.com

-----Original Message-----
**From:** Chris Litterio [mailto:cpl@riw.com]
**Sent:** Wednesday, August 10, 2005 7:51 AM
**To:** Berthiaume, Mark
**Subject:** Campus Stores/Follett

Mark, the contract has an effective date, but doesn't have a date of execution; can you let me know when the contract was actually signed by each party. Also, can you confirm that there are no side agreements, amendments or modifications? Thanks.

Christopher P. Litterio Esq.
Ruberto, Israel & Weiner, P.C.
100 North Washington St.
Boston, MA 02114
Tel: 617.742.4200
Fax: 617.742.2355
E-mail: CPL@riw.com
www.riw.com

Confidentiality Note: This email and any accompanying attachments contain information from the law firm of Ruberto, Israel & Weiner P.C. which may be confidential and/or privileged. The information is intended only for the use of the individual or entity named in the e-mail. If you are

not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this e-mail and its attachments is strictly prohibited, and that the e-mail should be deleted from your system immediately. If you have received this e-mail in error, please notify us immediately by telephone at 617.742.4200 so that we may take appropriate remedial action. Thank you.

## Berthiaume, Mark

**From:** Berthiaume, Mark
**Sent:** Monday, May 30, 2005 1:59 PM
**To:** 'David Baer'; 'cpl@riw.com'; 'bcroft@riw.com'
**Subject:** RE: Follett - Campus

Gentlemen,
I have received Brad's letter enclosing the original summons and order of notice. I will have this original returned to you in the morning unless you want to have someone pick it up today. Please be advised that Follett plans to proceed with Curry. I understand that you will be seeking to get a hearing on your request for injunctive relief scheduled in federal court for some time tomorrow. Please let me know if and when such a hearing is scheduled. Finally, I understand that you will be filing an Amended Complaint which strikes all references to our communications which I have advised you constitute settlement discussions. Please let me know when you intend to file this amended pleading. Mark

Mark A. Berthiaume
SEYFARTH SHAW LLP
Two Seaport Lane
Suite 300
Boston, MA 02210
617-946-4990
617-946-4801 fax
mberthiaume@seyfarth.com

-----Original Message-----
**From:** David Baer [mailto:DB@riw.com]
**Sent:** Friday, May 27, 2005 4:19 PM
**To:** Berthiaume, Mark
**Cc:** Chris Litterio
**Subject:** Follett - Campus

Mark - If you send Chris Litterio a letter today regarding Follett's withdrawal from Curry, would you please also copy me. Thank you. David

David Baer
**Ruberto, Israel & Weiner, P.C.**
100 North Washington Street
Boston, MA  02114
617.742.4200 ext. 244
617.742.2355  fax
db@riw.com
www.riw.com

Confidentiality Note: This email and any accompanying attachments contain information from the law firm of Ruberto, Israel & Weiner P.C. which may be confidential and/or privileged. The information is intended only for the use of the individual or entity named in the e-mail. If you are

8/23/2005

not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this e-mail and its attachments is strictly prohibited, and that the e-mail should be deleted from your system immediately. If you have received this e-mail in error, please notify us immediately by telephone at 617.742.4200 so that we may take appropriate remedial action. Thank you.