UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
CAMPUS STORES OF MASS., INC.,      )
     Plaintiff,                    )
                                   )
     v.                            )    C.A. No. 05-11116-NG
                                   )
FOLLETT HIGHER EDUCATION GROUP,    )
INC.,                              )
     Defendant.                    )
```
GERTNER, D.J.:

**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S MOTIONS FOR RECONSIDERATION, CLARIFICATION, AND STAY**
September 19, 2005

I.  **INTRODUCTION**

On August 2, 2005, the Court issued a preliminary injunction in this contract dispute [document #23], arising out of an alleged breach of a confidentiality and nondisclosure agreement signed by two campus bookstore retailers. In light of the strength of plaintiff Campus Stores' breach of contract claim, and serious doubts as to the adequacy of monetary relief in the event of a breach, the Court enjoined defendant Follett as follows:

> Pursuant to the Confidentiality and Nondisclosure Agreement between plaintiff Campus Stores of Massachusetts and defendant Follett Higher Education Group, signed on July 23, 2003, defendant Follett is hereby **ENJOINED** from (1) commencing its impending contract with Curry College, and (2) contracting with Curry College through the close of the next round of contract bidding. This injunction shall remain in effect until otherwise ordered by the Court.

Preliminary Injunction, document #23, entered August 2, 2005.

On August 12, 2005, defendant Follett filed a (revised) motion for clarification, reconsideration of the preliminary injunction, and/or stay pending the outcome of its appeal [document #28]. Plaintiff Campus Stores opposes Follett's motion, except for the motion to clarify. For the reasons discussed below, Follett's motion is **GRANTED** in part and **DENIED** in part as follows: the motion for reconsideration is **DENIED**, the motion for clarification is **GRANTED**; and the motion for stay is **DENIED**.

While I appreciate the difficulties the preliminary injunction may engender for Curry College and its students, Follett has known since this suit commenced in state court in May 2005 that any contract it entered into with Curry College may be preliminarily and/or permanently enjoined. Indeed, it apparently delayed entering into a formal agreement with Curry, while de facto operating the bookstore, until after this Court's hearing on June 24, 2005. And when it finally signed the agreement on July 18/20, 2005 – likely agreed upon in principle before then – the agreement was made retroactive to June 1, 2005.

Indeed, after this Court reread the June 24, 2005, transcript, and the pleadings which preceded it, it is clear that Follett made no effort to clarify then what it tries to clarify

today – that it had not just negotiated with Curry, it had concluded a contract, and it was in fact operating the bookstore. For if it had, the "likelihood of success on the merits" prong would have been even more clear.

In effect, Follett began their work on this contract under a cloud. They assumed the risk that a court would grant injunctive relief.

## II.  ANALYSIS

### A.  Follett's Motion For Reconsideration

Follett urges the Court to reconsider its preliminary injunction (1) because of the "extreme hardship" that Curry College and its students would suffer as a result of Follett ceasing its bookstore operations at this time; and (2) because the preliminary injunction was erroneously issued, there being no evidence that Campus Stores would suffer irreparable harm as a result of the breach. Neither of these arguments is persuasive.

#### 1.  Irreparable Harm

The Court gave careful consideration to the irreparable harm issue in its 23-page memorandum, reasoning that it would be "difficult if not impossible to quantify the harm suffered by Campus Stores; what is the monetary value of Campus Stores' lost opportunity to bid to renew its contract [with Curry] without its colossal competitor bidding against it?" Memorandum and Order Re: Plaintiff's Motion for Preliminary Injunctive Relief,

document #22, filed August 2, 2005, at p. 20.  The Court pointed to K-Mart v. Oriental Plaza, 875 F.2d 907 (1st Cir. 1989), wherein a shopping center tenant sued its landlord for breach of lease as a result of the construction of an additional retail space in the shared parking lot.  The First Circuit upheld injunctive relief in that case because quantifying the harms – loss of goodwill, continuing encroachment, and complicated loss of revenue calculations – would be "sufficiently problematic as to defy precise dollar quantification."  Id. at 915.

Since Follett presents no new arguments on the issue of irreparable harm, their argument for reconsideration on this ground fails.  A court should grant a motion for reconsideration "only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." Davis v. Lehane, 89 F.Supp.2d 142, 147 (D. Mass. 2000), citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4478, at pp. 789-90 (1981).  Follett has not demonstrated any of these three factors.

### 2.  "Extreme Hardship"

Follett argues that the Court "appears to have been under the misimpression that Follett had not yet contracted with Curry College to operate the school's bookstore" upon issuing the

preliminary injunction. In effect, this is an argument that the balance of hardships weighs against injunctive relief.

Indeed, if the Court were under the wrong impression, it was because Follett waited until now – on its motion for reconsideration – to clarify the fact that it has been operating Curry's bookstore since June 1, 2005. Armed with that information, Follett now argues that abiding by the preliminary injunction would cause severe hardship for the students of Curry College who are now just beginning their fall semester. But that information is not new to Follett.

In effect, Follett was on the horns of a dilemma: If it made clear that it had not only negotiated with Curry, ostensibly in violation of its contract with Campus Stores, but that it had actually concluded the contract *and moved in*, it may have buttressed the irreparable harm prong, but the likelihood of success prong would have also been made more clear. The fact that Follett had already begun to operate Curry's bookstore arguably supports Campus Stores' claim that there was a blatant breach of the agreement, i.e. "not to contact, solicit or accept business from, either directly or indirectly, Campus Stores' [] customers or host colleges through the close of the next round of contract bidding."

A timeline is in order here:

- May 26, 2005:  Campus Stores files suit against Follett, including a motion for preliminary injunction, in state court.  It alleged a violation of the Campus-Stores agreement "not to contact, solicit or accept business from, either directly or indirectly, Campus Stores' [] customers or host colleges through the close of the next round of contract bidding";

- May 27, 2005:  Follett removes the suit to federal court and the case is assigned to this Court;

- May 27, 2005:  Campus Stores re-files its motion for preliminary injunction in this Court;

- May 31, 2005: Campus Stores' contract with Curry College expires; Campus Stores moves for an emergency hearing on their motion for preliminary injunction, noting their belief that Follett and Curry were on the brink of entering into a new contract;

- June 1, 2005: Notwithstanding this litigation, Follett began operating the Curry College bookstore;

- June 8, 2005:  The Court schedules a hearing on Campus Stores' motion for preliminary injunction;

- June 15, 2005: Campus Stores files an amended complaint stating its understanding that "Follett has accepted business from Curry College and is now the College's bookstore operator";

- June 23, 2005: Campus Stores requested a copy, by email, of the alleged contract between Follett and Curry, but Follett's counsel failed to provide a copy before the hearing stating that they received the email too late and did not bring a copy to the hearing;

- June 24, 2005: Hearing is held; Follett argues that their negotiations with Curry do not amount to a breach of their contract with Campus Stores (and thus no likelihood of success on the merits); it does not clarify that a contract had effectively been concluded and that it was operating the bookstores; the Court made a finding on the record and in open court that Campus Stores is likely to succeed on the merits of its breach of contract claim because the contract at issue

>   prevented Follett from even negotiating with Curry; the
>   Court reserved a finding of irreparable harm;[1]
> 
> - June 29, 2005: Follett finally answers the complaint, admitting that "it is now operating the bookstore at Curry College";
> 
> - July 18/20, 2005: Written contract between Curry College and Follett is executed and retroactively dated June 1, 2005;
> 
> - August 2, 2005: Preliminary injunction issues prohibiting Follett from "commencing its impending contract with Curry College";
> 
> - August 3, 2005: Follett files a notice of appeal as to the preliminary injunction;
> 
> - August 8, 2005: Follett files its initial motion for clarification and/or reconsideration, arguing that "Follett has been operating the Curry bookstore <u>under contract</u> since June 1, 2005";
> 
> - August 12, 2005: Follett files a "revised" motion for clarification and/or reconsideration, now arguing that "Follett has been operating the Curry bookstore since on or about June 1, 2005."

Having been put on notice in May 2005 that its negotiations with Curry College may be enjoined, and having been explicitly forewarned during a hearing on June 24, 2005, that Campus Stores

---

[1] For example, when the Court pressed Follett on the issue of whether the fact of its negotiations with Curry amounted to a breach of its contract with Campus Stores – indeed, the time line provided in Follett's briefs concludes with Curry and Follett negotiating – Follett did not mention that Curry and Follett had in fact progressed beyond negotiations:

> At least from Follett's perspective with regard to Curry and, in fact, it was I think significant at least as a factual matter, there was no confidential information utilized.  We didn't go out and solicit Curry.  In July of 2004, Curry contacted Follett.  There had been no prior communication whatsoever by Follett of Curry.

Transcript of Hearing, June 24, 2005, at p. 16.

was likely to prevail on the merits of its suit, Follett <u>chose</u> to operate on Curry's campus and finally consummate its contract with Curry on July 18 and 20, 2005.  Follett cannot now ask the Court to consider an "extreme hardship" argument, which it had every opportunity to make in its earlier briefs and at oral argument, and which it could have avoided.

Follett's behavior is troubling, to say the least.  "A party seeking to invoke the aid of equity should not be encouraged to call the other party's attention to his left hand, while surreptitiously pocketing the family jewels with the right hand." <u>K-Mart</u>, 875 F.2d at 911 (in suit for breach of contract, affirmed issuance of a preliminary injunction requiring the demolition of pre-constructed retail space).  A motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." <u>Aybar v. Crispin-Reyes</u>, 118 F.3d 10, 16 (1st Cir. 1997)

In any event, Follett's "extreme hardship" argument is not persuasive.  In <u>K-Mart</u>, <u>supra</u>, the First Circuit upheld injunctive relief even though it required the extraordinary measure of demolishing a newly constructed building.  In so doing the court acknowledged the considerable expense of "razing the offending structure," but affirmed the injunction on the ground

that the defendant knowingly incurred such costly risks: "After all, appellant's wound, deep as it appears, was self-inflicted." K-Mart, 875 F.2d at 916. Likewise, while it is true that it will cause substantial disruption on Curry's campus when Follett finally abides by the preliminary injunction and ceases operating Curry's bookstore, these hardships will have been self-inflicted. Indeed, for several months, both Curry and Follett have been aware of Campus Stores' challenge to their negotiations and any contract resulting therefrom.

### B.    Follett's Motion For Clarification

In light of Follett's recent (and overdue) disclosure that it has in fact been operating the Curry bookstore since approximately June 1, 2005, and that it did not enter into a written contract with Curry until July 18 and 20, 2005, clarification of the preliminary injunction is in order. Accordingly, Follett's motion to clarify the preliminary injunction, issued August 2, 2005, is **GRANTED** so that the preliminary injunction now clearly requires Follett to withdraw forthwith from operating Curry College's bookstore.

### C.    Follett's Motion To Stay The Preliminary Injunction

Under Federal Rule of Civil Procedure 62(c), injunctions can be stayed pending appeal *at the district court's discretion*. The criteria for granting a stay are essentially equivalent to those required for an injunction: (1) moving party's likelihood of

success on the merits of the appeal; (2) irreparable harm to the moving party; (3) balance of harm favoring the moving party; and (4) a superior claim to the general public interest.  Buntzman v. Springfield Redevelopment Authority, 918 F.Supp. 29, 30 (D. Mass. 1996).  Follett does not meet any of these criteria.

First, Follett cannot show a likelihood of success on the merits of its appeal since the appellate court will review this court's grant of a preliminary injunction for abuse of discretion.  Bl(a)ck Tea Society v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004).  This is a highly deferential standard of review, particularly where the lower court has reached its decision after carefully balancing conflicting factors.  Id.; see also Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 158 (1st Cir. 2004).

Second, Follett has not established that it will suffer irreparable harm absent a stay.  Indeed, Follett has taken the position throughout this litigation that Campus Stores' alleged improper ouster from Curry cannot constitute irreparable harm because of the availability of monetary damages to cover such injury.  Follett's use of the reverse argument for its convenience is unpersuasive.

Third, the balance of harms points in both directions.  On the one hand, this injunction surely harms a non-litigant here, Curry College.  On the other hand, public policy strongly favors

enforcing the injunction even while Follett's interlocutory appeal is under review.  If the preliminary injunction were stayed, Follett would only become more deeply entrenched in operating Curry's bookstore, thus making their eventual separation more difficult.  Further, during the course of this litigation, Curry disclosed that another nationwide campus bookstore operator had bid for the Curry contract, so Curry should be able to timely locate a replacement bookstore operator.

Finally, the public interest squarely falls in favor of enforcing the injunction without delay.  Indeed, there is great public interest in protecting the solemnity of contracts, particularly where a large, powerful corporation is attempting to circumvent its contractual obligations toward a small-time competitor.  See K-Mart, 875 F.2d at 916 ("if commerce is to function in our capitalistic system, entrepreneurs must play by the rules").

### III. CONCLUSION

For the reasons discussed above, Follett's motion [document #28] is **DENIED** in part and **GRANTED** in part, as follows: (1) Follett's motion for reconsideration is **DENIED**; (2) Follett's motion for clarification is **GRANTED** so that the preliminary injunction specifically requires Follett to cease its current operations at Curry's bookstore; and (3) Follett's motion for stay is **DENIED.**

The Court will immediately issue an amended preliminary injunction to reflect the clarification.  The amended preliminary injunction will read:

> Pursuant to the Confidentiality and Nondisclosure Agreement between plaintiff Campus Stores of Massachusetts and defendant Follett Higher Education Group, signed on July 23, 2003, defendant Follett is hereby **ENJOINED** from (1) commencing any impending contract with Curry College, **(2) continuing with any current contract with Curry College, including any contract to operate Curry's campus bookstore,** and (3) further contracting with Curry College through the close of the next round of contract bidding.  This injunction shall **become effective immediately** and shall remain in effect until otherwise ordered by the Court.

**SO ORDERED.**

**Dated: September 19, 2005**          **　s/ NANCY GERTNER　**
                                        **U.S.D.J.　**